Theresa Anglim, appellee, v. James Anglim et al.,
appellants.

299 N. W. 346

Filed July 18, 1941.  No. 31140.

R. B. Hasselquist and Howard B. Redden, for appellants.

Ziegler, Dunn & Becker and D. L. Manoli, contra.

Heard before Paine, Carter and Messmore, JJ., and
Spear and Falloon, District Judges.

Falloon, District Judge.

This case involves the modification or setting aside of a
decree from bed and board on the ground that a decree
of absolute divorce had been subsequently granted in the
state of Nevada, and also that in probate proceedings in that
state it had been held that the appellee was not the widow
but had been legally divorced.

There is no dispute as to the facts.  The appellee, Theresa
Anglim, was married to James T. Anglim in Omaha, on

October 4, 1899, and thereafter this couple lived in Omaha as husband and wife. Eight children were the issue of this marriage. On March 9, 1923, Theresa Anglim filed in the district court for Douglas county, Nebraska, her petition for a divorce from bed and board, charging her husband with extreme cruelty. James T. Anglim cross-petitioned for an absolute divorce, and the matter was, on March 12, 1930, determined by the district court, which found the appellee was entitled to divorce from bed and board, and to separate maintenance, and also found against the appellant husband, James T. Anglim, on his cross-petition, and that the husband should pay $65 a month for support of herself and children. The court also in its decree reserved the right to modify the same as far as alimony and custody of children were concerned upon the application of either party. This decree was affirmed and mandate therein issued by the supreme court of this state in March, 1931. Subsequently, the husband sought unsuccessfully to obtain an absolute divorce because of extreme cruelty and the separation of parties since 1923, and the last time, in March, 1937, the district court again found against the husband upon these issues and dismissed his petition. Also, in March 1937, the amount of alimony and support money was reduced to $40 beginning March 1, 1937, instead of the $65 originally granted.

On August 7, 1937, the husband, James T. Anglim arrived in Reno, Nevada, where he has since resided, voted three times and transferred membership from the Omaha Camp to the Reno Camp of the United Spanish War Veterans. He stated that he came to Reno for his health and to make it his home. On November 12, 1937, in Nevada, James T. Anglim filed suit for absolute divorce from his wife, Theresa, on the grounds of extreme cruelty, desertion and because they had lived separate for more than five years. Personal service was had on the wife in Omaha on November 20, 1937, and on January 13, 1938, by default, the husband obtained an absolute divorce in Ormsby county, Nevada, on the grounds of extreme cruelty and having lived separate

for more than five years. The custody of the minor child, Robert Donald, was left with the wife, and the husband was ordered to pay $40 monthly for support thereafter until January 1, 1939, when it would be reduced to $20 monthly until March, 1941, at which time the child would become of age. The decree also provided that the support money was to run concurrently, but not in addition to the provision made for support by any other court. It also provided, as in the Douglas county decree, that the wife was to have the use of the residence property in Omaha. The husband died at Reno, Nevada, on July 12, 1939, and the wife has lived all the time in Omaha for over 29 years. The evidence shows that the wife made no appearance in the divorce proceedings in Nevada, that she never lived there, and the only notice she had was the personal summons served upon her in Douglas county. The evidence also shows probate proceedings were had in Nevada, where the will of James T. Anglim was admitted to probate. No appearance was ever made by the wife in the probate proceedings in Nevada except that she filed an election under the law of Nebraska provided for in estate matters, in which she stated she appeared solely and for that purpose only. No further action was taken nor was any appearance further made by the wife in these proceedings. On December 26, 1939, the Nevada district court in the probate proceedings found that Theresa Anglim was not his widow, by virtue of the Nevada divorce, and had no right to elect or inherit from him under the Nevada law or of any other state and decreed that her election was of no force and effect. The support money has all been paid under the decree as modified of the Douglas county district court to July 1, 1939, except for the six months prior thereto it was paid at rate of $20 a month, leaving $120 thereof unpaid and no payments have been made since. R. B. Hasselquist was appointed executor on December 29, 1939, in ancillary proceedings in this estate by the Douglas county court, and is so acting, and the interveners are the sisters of deceased, who were left the residue of the estate under the will.

On July 31, 1940, order of revivor was entered, after proper notice to all parties interested, by Judge Willis G. Sears, in the sum of $600, being an unpaid balance due and payable under the separate maintenance decree heretofore entered and as modified. Later, upon motion of the executor and petition by interveners to vacate this decree, another hearing was had, and on September 6, 1940, District Judge Herbert Rhoades overruled and dismissed said application and the case is properly here for review. There is not much dispute as to the facts in this case. Nor can there be any question that, in the various proceedings in Douglas county, Nebraska, had prior to the Reno divorce, the courts here found that the husband, now deceased, was the wrong-doer; also, under the evidence, there is no doubt but that it has been established that the husband was a *bona fide* resident of Nevada at the time the divorce there was granted.

The dispute comes over whether the Nebraska courts must accept, at full face, the decrees in the divorce and probate proceedings, under the full faith and credit clause of the federal Constitution or under the rule of comity between the states, or, briefly, whether Theresa Anglim is still the widow of the deceased in eyes of the courts of this state. That the parties were married in Omaha, which was the matrimonial domicile for nearly 30 years, and that the wife never lived in Nevada or made any appearance in the divorce proceedings there, and that the courts of this state had on several different occasions adjudged the husband to be the wrong-doer and the wife the innocent party, there likewise is no doubt.

Must Nebraska courts under such facts give full faith and credit to the Reno divorce? Has the Nevada court jurisdiction over the wife and her marital relationship, or do the proceedings there only operate over the status of the husband?

The supreme court of the United States in *Haddock v. Haddock*, 201 U. S. 562, 26 S. Ct. 525, has laid down the principles which will either compel one state to recognize a divorce decree of another state or will justify its refusal to do so.

"The mere domicile within the state of one party to the marriage does not give the courts of that state jurisdiction to render a decree of divorce enforceable in all the other states by virtue of the full faith and credit clause of the federal Constitution against a nonresident who did not appear and was only constructively served with notice of the pendency of the action." *Haddock v. Haddock,* 26 S. Ct. 525.

In the case above, the parties were married in New York. Subsequently, the husband went to Connecticut and there, upon constructive service, procured a divorce. Subsequently, the plaintiff wife brought suit against the defendant husband in New York for a decree of absolute divorce and personal service was had upon the defendant. The defendant interposed as a defense the Connecticut divorce decree, claiming that it was entitled to full faith and credit. The supreme court of the United States held that the decree having been procured by the wrong-doing spouse, in the state where the wife was not present, and which had not been the matrimonial domicile and to the jurisdiction of whose courts the plaintiff wife had not submitted, was not entitled to full faith and credit by the New York courts, and said: "Sixth. Where the domicile of matrimony was in a particular state, and the husband abandons his wife and goes into another state in order to avoid his marital obligations, such other state to which the husband has wrongfully fled does not, in the nature of things, become a new domicile of matrimony, and, therefore, is not to be treated as the actual or constructive domicile of the wife; hence, the place where the wife was domiciled when so abandoned constitutes her legal domicile until a new actual domicile be by her elsewhere acquired."

Justice White goes on to say in this opinion: "Coming to apply these settled propositions to the case before us three things are beyond dispute: a. In view of the authority which government possesses over the marriage relation, no question can arise on this record concerning the right of the state of Connecticut within its borders to give effect to the decree of divorce rendered in favor of the husband by the

courts of Connecticut, he being at the time when the decree was rendered domiciled in that state. b. As New York was the domicile of the wife and the domicile of matrimony, from which the husband fled in disregard of his duty, it clearly results from the sixth proposition that the domicile of the wife continued in New York. c. As then there can be no question that the wife was not constructively present in Connecticut by virtue of a matrimonial domicile in that state, and was not there individually domiciled and did not appear in the divorce cause, and was only constructively served with notice of the pendency of that action, it is apparent that the Connecticut court did not acquire jurisdiction over the wife within the fifth and seventh propositions; that is, did not acquire such jurisdiction by virtue of the domicile of the wife within the state or as the result of personal service upon her within its borders."

This *Haddock* decision has started numerous decisions which hold that a decree of divorce rendered by the court of the domicile of the wrong-doing spouse alone is not entitled to full faith and credit unless the spouse who is not domiciled there is either personally subject to the jurisdiction of the state which grants the divorce, or the state granting the divorce is the last state in which the spouses are domiciled together as husband and wife, or the absent spouse has consented to the decree being entered.

This decision has settled the proposition that no state is bound, under the full faith and credit clause of the federal Constitution, to recognize, as against its citizens, divorces obtained in other states upon constructive notice, at a place other than the matrimonial domicile. In other words, each state is left free to adopt such course respecting such foreign divorces as seems most likely to promote the happiness and welfare of its citizens, consistent with a due regard to comity and good morals. The marriage relation of the parties as such, under this decision, is divisible, and therefore the status of the wife remains in the state of the matrimonial domicile, and never came within the jurisdiction of the Nevada court.

In *Wagoner v. Wagoner*, 287 Mo. 567, 229 S. W. 1064, it is said: "Though ordinarily the matrimonial domicile is the domicile of the husband, the domicile does not follow him where a decree of separate maintenance has been rendered, or where the husband illegally deserts his wife, but in such cases the matrimonial domicile, so far as the wife is concerned, remains in the place of their former residence in which the wife continues to reside."

The Missouri court goes on to say, in *Wagoner v. Wagoner:*

"In this case the wife was residing in Missouri, under judicial decree obtained against her husband upon personal service. That decree fixed her matrimonial status separately from him.

"The question here is whether he can put this separate matrimonial status adjudged to his wife into his own pocket, and carry it to Nevada, and there use it to give jurisdiction to a court of that state to set aside the judgment of the Missouri court which fixes it. This absurd proposition is answered definitely by the court which is the final arbiter in the matter, and we see nothing in the cases cited by respondent to the contrary. They all proceed upon the well-established theory that ordinarily the matrimonial domicile of the wife follows that of the husband. This is true, for there can be but one such domicile while it is her duty to live with him. They are matrimonially one person, and, as such, can have but one abiding place. When that unity is destroyed by a decree of court founded upon the misconduct of the husband, or is wrongfully repudiated by him, the law permits her to get bread and the shelter of a home without surrendering her matrimonial right.

"This doctrine covers completely the facts of this case and if any court has inadvertently disregarded it we need not follow it into the error. It follows that the Nevada court having no jurisdiction of the *res*—the subject-matter of this suit—its decree, whatever may be its effect on the rights and duties of the respondent, is void in all things relating to the matrimonial status of the appellant, inclusive of the

judgment of the St. Louis circuit court which established her innocence of wrong in the matrimonial relation and her desertion by respondent together with her right to be his wife wherever she might lawfully be. This is for her the *situs matrimonii.*"

In *Parker v. Parker,* 222 Fed. 186, the court say: "It seems well settled by federal authority that, when the wife is deserted by the husband without justification, the matrimonial domicile stays with her, the innocent party, and that she may in consequence acquire a new domicile, which may become, indeed, the matrimonial domicile, as was held in *Barber v. Barber,* 21 How. 582, 16 L. Ed. 226, and *Haddock v. Haddock,* 201 U. S. 570, text."

The court in the case above further speak: "The decision impresses us with the belief that the reasoning of that decision gives the court of the domicile of the innocent party jurisdiction to render a judgment binding everywhere, and deprives the court of the domicile of the guilty party of jurisdiction to render a judgment binding save in the state where rendered."

The court further goes on to say in this *Parker* case: "The obligatory recognition of such a decree beyond the limits of the state depends, however, upon whether there was jurisdiction of the matrimonial relation of the parties. That relation may not follow the domicile of the offending husband. If the adopted residence is intended to perpetuate a fraud on the innocent wife, or if the wife is without fault, and was deserted, the matrimonial domicile remains in the state of her residence."

In *Dean v. Dean,* 241 N. Y. 240, 149 N. E. 844, the court, speaking through Justice Cardozo, said: "The wife domiciled in Canada and there abandoned by her husband, became by her marriage a party to a relation which the courts of Pennsylvania have attempted to destroy. They have done this, though there has been no submission to the jurisdiction by her, upon the basis of a domicile which the erring husband has wrongfully set up apart from her. We think the judgments of this court leave no escape from the con-

clusion that according to the standards of justice prevalent among us, injustice would be done if that attempt were to prevail."

In the case of *Miller v. Miller,* 200 Ia. 1193, 206 N. W. 262, the wife in Iowa obtained a decree for separate maintenance in 1912 on the grounds of cruelty and desertion as of 1911. The husband went into Missouri and in 1921 obtained a divorce. The wife sought to increase her alimony in the Iowa courts because the husband had inherited some property, while the husband sought to be relieved from further payments. The trial court recognized the Missouri divorce and treated the marriage as having been dissolved, but extended the alimony payments for a period of two years subsequent to the marriage dissolution by the Missouri court. The Iowa court in its opinion did not think the New York doctrine as laid down in the *Haddock* case very compelling and, though it stated the letter had released it, the spirit of the Constitution still bid them hold to the validity of foreign divorce decrees.

The Iowa court in *Miller v. Miller, supra,* say (206 N. W. 262) : "Where separate maintenance was awarded to wife, and thereafter husband acquired domicile in Missouri and obtained divorce there, in wife's petition in nature of creditor's bill, husband's decree having been wholly *in rem,* trial court was not precluded from adjusting property rights of wife."

In *Smith v. Smith,* 19 Neb. 706, 28 N. W. 296, where it was sought to have a divorce procured in Utah territory recognized as valid, this court said : "In a divorce suit the court, in granting a decree, declares and fixes the status of the parties to the suit. If but one of the parties is a resident of the state, and the other a nonresident, the court in a proper case may adjudge the status of the resident towards the nonresident, but it has no such power over residents of another state."

In *Barber v. Barber,* 62 U. S. 582, the wife obtained a decree of divorce from bed and board in the state of New York where the parties had been married and had lived.

Later, the husband went to Wisconsin, where he obtained a decree of divorce. In a suit brought by the wife, in the federal court of Wisconsin, to recover the amount due her as alimony under the New York decree, the husband claimed, first, that he was not bound by the New York decree since he was divorced, and, second, that the federal court had no jurisdiction because the wife was, by reason of her husband's domicile in Wisconsin, a citizen of Wisconsin. The court held, first, that the wife was a citizen of the state of New York, saying: "So when parties are already living under a judicial separation, the domicile of the wife does not follow that of the husband." The court further said: "It also appears, from the record, that the defendant had made his application to the court in Wisconsin for a divorce *a vinculo* from Mrs. Barber, without having disclosed to that court any of the circumstances of the divorce in New York; and that, contrary to the truth, verified by that record, he asks for the divorce on account of his wife having wilfully abandoned him. It is not necessary for us to pass any opinion upon the legality of the decree, or upon its operation there or elsewhere to dissolve the *vinculum* of the marriage between the defendant and Mrs. Barber. It certainly has no effect to release the defendant there and everywhere else from his liability to the decree made against him in the state of New York, upon that decree being carried into judgment in a court of another state of this Union, or in a court of the United States, where the defendant may be found, or where he may have acquired a new domicile different from that which he had in New York where the decree was made there against him."

While the supreme court of Iowa, in *Miller v. Miller, supra,* said that the pronouncement of the *Haddock* case lifted from the various states the mandate of the federal Constitution, it would interpose no obstacle in the way of such state courts to recognize the validity of such foreign decrees as a matter of comity between states, and the reasoning in that opinion was very impressive.

This court believes, however, the better philosophy is to

follow the rule laid down by the highest court in our land. Theresa Anglim obtained a decree of separate maintenance which was in full force and effect by the Nebraska courts and was such that jurisdiction continued. The district court of Nebraska had on several occasions found the husband to be the wrong-doer. It was the matrimonial domicile, and the wife never did anything to lose that domicile, and never submitted herself to the jurisdiction of the Nevada court in the divorce proceeding there. State courts are not bound, under the full faith and credit clause of the federal Constitution, to recognize, as against its own citizens, divorces obtained in other states, by constructive service, where the matrimonial domicile of the innocent party remains here, and where our courts had determined the other spouse the wrong-doer, but such courts may determine for themselves what effect it will give such foreign decrees here. A decision of the federal supreme court on a federal constitutional question is conclusive on the state courts.

The only remaining question in regard to the Nevada divorce decree is whether, as a matter of comity or state courtesy, or, to put it differently, our own interpretation of the conflict of laws, should we declare a public policy and recognize such a decree that we may feel free to refuse. If such a policy is repugnant to our sense of justice, or prejudicial to the interests of our citizens, under our laws and administration of justice, we should not hesitate to make the proper decision and say it cannot apply. A state has the right to apply certain principles of justice, even though opposed to its conception elsewhere, as to exact justice, not only to the stranger, but to its own citizens. Comity gives a certain degree of latitude in recognizing foreign decrees in the absence of a positive obligation.

The district court of Washoe county, Nevada, in the probate proceedings, held that Theresa Anglim had ceased to be the wife of James T. Anglim since the divorce decree obtained in that state on January 13, 1938, is not now his widow, and had no rights as such to elect not to take under his will or to inherit from him as his widow, under the

law of descent and distribution of Nevada or of any other state. This decree may be binding in Nevada, but does it determine for Nebraska the same, absolute and binding conclusion under the full faith and credit clause, and under the rule of state comity? The court there did not have jurisdiction in the marital status of Theresa Anglim, but was only concerned with the estate proceedings, and had no jurisdiction over the wife unless she appeared and invoked its jurisdiction over her rights. No appearance was ever made by her, except that she filed an election, which she claimed was made solely to comply with the Nebraska statute in regard to rights of the widow. Did she so restrict herself or was such a filing a general appearance?

This court in *Mettler v. Warner*, 98 Neb. 111, 152 N. W. 327, held that it was proper for the widow to file her election in the sister state which was the domicile of her deceased husband, and that her election filing there, in effect, would operate on proceedings, later brought in this state, as affecting her status. The appellants contend that such a filing constituted a general appearance, and therefore the wife is bound thereby and must accept the decision of the Nevada court as binding on her rights here. We think not. The filing did not ask the Nevada court to pass on her rights here, nor is such decision binding under the record made. The Nevada court was not asked whether or not she could make such a decision. If she had not filed such election, she might have barred herself by the statute. She specifically objected to the jurisdiction of the Nevada court over her person or rights, and only filed and registered her election because required by the Nebraska statutes. Did this constitute a general appearance by the widow?

In the case of *Hammond v. District Court of Eighth Judicial District,* 30 N. M. 130, 228 Pac. 758, 39 A. L. R. 1490, where the question involved was whether the plaintiff had made a general appearance, the plaintiff had filed objections upon various legal grounds and it was contended that this constituted a general appearance and gave the court jurisdiction over the person of the defendant. The court said:

"The expression, 'which recognizes the case as in court,' as used in some if not all of these several cases, means that it recognizes the case as pending in court, with jurisdiction of the subject-matter and of the parties. In order to do this, the defendant must seek some affirmative relief at the hands of the court, or he must ask a favorable decision upon some matter of a substantive character, or endeavor to secure a continuance or postponement. The reason underlying the doctrine is that no such action can be taken without the court possesses jurisdiction over his person, and he is not entitled to any such affirmative relief or favorable ruling unless the court possesses jurisdiction over his person, and when he seeks such relief, he necessarily assumes the attitude that such jurisdiction has been acquired, and having taken that position, he is bound thereby, and will not be heard afterwards to say otherwise. No such relief was sought by the defendants in making the objection referred to. They merely presented legal objections to an action then being taken by the court without their request or solicitation. So it cannot be said that the defendants entered a general appearance, thereby cutting themselves off from the right to present this question here."

Even if the court of Nevada, in the probate proceedings, declares the wife is not the widow of the deceased, the courts of this state are not bound so to declare, especially if such is not a fact. The Nevada court does not have jurisdiction over the property here. Our courts and ours alone determine the procedure in probate matters affecting real property in this state. No matter what the Nevada court determined, under the evidence and record in this case, Nebraska courts have that right in regard to property here and to rights of its own citizens. The probate jurisdiction of the Nevada courts cannot determine this marital status when its divorce courts cannot.

The decree for separate maintenance was final so far as the Nebraska courts were concerned. The decree for maintenance or alimony under section 42-319, Comp. St. 1929, became a lien. It was proper to revive it against the repre-

sentatives of the deceased. An execution could be properly issued and levied thereupon when it had been revived.

In *Nygren v. Nygren,* 42 Neb. 408, 60 N. W. 885, it was held: "A decree for alimony is a lien upon real estate the same as a judgment at law, and is enforceable in the same manner."

"Such a judgment is for a definite amount and is a lien, not only for the amount of the matured instalments and interest thereon, but also as security for the payment of those instalments yet to become due during the minority of the younger child." *Wharton v. Jackson,* 107 Neb. 288, 185 N. W. 428.

This amount was to be paid to the wife as alimony and was not made contingent upon the age of the minor children, but only subject to modification by the decreeing court, which right the court retained at all times. The appellants contend that the support payments abated at the death of the husband and that, in any event, the judgment could only be revived for the difference between the Nebraska decree and the amount actually paid by the now deceased husband, or the sum of $120.

This court has indicated in *In re Estate of Rusch,* 89 Neb. 265, 131 N. W. 209, that support money payments do not abate upon death. The court there said: "As to maintenance the decree is subject to change. It may bind the father while he is living and his estate when he is dead. The obligation of a father to support his helpless offspring may survive both divorce and death. *Miller v. Miller,* 64 Me. 484; *Seibly v. Person,* 105 Mich. 584."

Where a wife secured a decree for separate maintenance, upon personal service, and the husband subsequently in another jurisdiction, on constructive service, without bringing the former decree to the attention of the latter court, secured a divorce, and never paid the maintenance decree, said separate maintenance decree will continue in full force and effect until directly modified, especially where the former court retained such right, and where the husband dies before such modification, all instalments, due and unpaid, and other

rights thereunder, unless modified by the court, or prohibited by specific statute, may be enforced against the estate of the deceased husband in this state.

We believe the judgment of the court below is right.

AFFIRMED.