WILLARD C. YOST, APPELLEE, v. MAUDIE M. YOST, ALSO KNOWN AS MAUDIE M. FANNING, APPELLANT.

72 N. W. 2d 689

Filed October 28, 1955. No. 33794.

*Albert S. Johnston* and *Henry W. Curtis,* for appellant.

*Beatty, Clarke, Murphy & Morgan* and *John P. O'Brien,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CARTER, J.

The plaintiff, Willard C. Yost, brought this suit in the district court for Chase County to obtain a divorce from the defendant, Maudie M. Yost, on the grounds of adultery and cruelty. Plaintiff also prayed for the custody of the two minor children of the parties. The defendant, Maudie M. Yost, denied the allegations of the petition and alleged that she had been lawfully divorced from the plaintiff in the State of Florida on the grounds of cruelty, and prayed for the custody of the minor children. By his reply the plaintiff alleged that the purported Florida divorce was void in that the defendant, Maudie M. Yost, never became a bona fide resident of that state, that personal service of summons was never had upon the plaintiff, that the only process obtained was by publication, and that said purported divorce was obtained by fraud perpetrated upon the Florida court by the defendant, Maudie M. Yost, and Cleo Fanning, with whom she subsequently entered into a purported marriage. The trial court held the Florida marriage to be void, granted a divorce on the ground of cruelty to the plaintiff, granted the prayer of the plaintiff for the custody of the minor children, denied alimony to the defendant, Maudie M. Yost, and denied an allowance of attorneys' fees to the defendant. The costs of the action, other than the costs of defendant's depositions, were taxed to the plaintiff. The defendant, Maudie M. Yost, appeals. The plaintiff, Willard C. Yost, cross-appeals.

Willard C. Yost will hereinafter be referred to as the plaintiff and Maudie M. Yost as the defendant.

Plaintiff and defendant were married on August 2, 1940. From February 1, 1943, to October 2, 1953, they lived together in a modern home on the ranch of Glen Maddux, about 10 miles from Imperial, Nebraska. They

have two small children. Plaintiff was employed by the month by Maddux and in addition had a share in some of the crops and produce, and the privilege of running some of his own cattle on the ranch. Cleo Fanning lived on a farm about 5 miles from the Maddux ranch. Fanning was married but has no children. On October 2, 1953, defendant was 31 years of age and Fanning was 51.

The record shows that defendant met Fanning at a dance approximately 2 years prior to October 2, 1953. Sometime thereafter they commenced meeting clandestinely in various isolated places. Their amorous conduct continued until a few months before October 2, 1953, when they began to plan and conspire to rid themselves of their spouses in order that they might marry. Their clandestine conduct became generally known to certain relatives of both, including defendant's mother and brother, who made attempts to break up the relationship without success. On October 1, 1953, defendant packed suitcases for herself and her 7-year-old daughter and hid them in the trunk of Fanning's automobile. The next day defendant drove the family car into Imperial, parked the car on the street, and departed with Fanning, taking the child Sylvia with her. The evidence sustains a finding that plaintiff had no inkling of the transaction until he found the car and a note left in the glove compartment by the defendant, advising him of her intentions.

It appears that Fanning, before leaving, had consulted a lawyer regarding the divorce laws of various states and obtained a directory of lawyers in the states through which they expected to pass. They made inquiries in at least one state other than Florida concerning the residence requirements for the obtaining of a divorce. On October 12, 1953, they arrived in Panama City, Florida, where Fanning consulted a lawyer and subsequently rented an apartment for defendant and Sylvia, and a room for himself. Sylvia was placed in school and attended until the end of the school year

on June 4, 1954. All living expenses were paid by Fanning.

Shortly after the expiration of 90 days, the residence requirement in divorce proceedings in Florida, suits for divorce were commenced in Leon County circuit court by defendant and Fanning to procure divorces from their respective spouses in Nebraska. Service of process was had on plaintiff by publication. The evidence in each case was taken by a special master, each of the parties providing corroborative evidence for the other. On April 20, 1954, defendant obtained a final decree of divorce. On April 23, 1954, they made application for a marriage license and on May 1, 1954, they went through a ceremonial marriage ceremony. On June 7, 1954, 3 days after the close of the school term, they returned to Lincoln, Nebraska, where they purchased a home and have lived purportedly as husband and wife. Plaintiff commenced the present suit for a divorce on July 22, 1954, in the district court for Chase County.

When defendant left with Fanning she had one suitcase of clothes for herself and one for Sylvia. She had $15 in money. Fanning took his car, some clothes, a radio, and a checkbook. Fanning is shown to have been a wealthy rancher and farmer. He has several thousand acres of land and considerable money and personal property. His bank accounts were left in Nebraska banks and his bonds and securities were left in a safety deposit box in a Nebraska bank. They acquired no property in Florida. Fanning made his income tax return to the Director of Internal Revenue at Omaha. He took a letter of credit with him. He had planted fall wheat on his farm which was turned over to his renter on some subsequent date. There are letters in the record written by defendant and Fanning indicating a clear intention that they intended to return to Nebraska after obtaining a divorce. They had no destination in mind when they left Nebraska and located in Panama City, Florida, after consulting a

lawyer concerning the divorce laws of that state. Their divorce cases were filed in Tallahassee, Leon County, instead of Panama City, Bay County, because their lawyer stated that the local circuit judge was too strict in divorce matters.

The record is replete with admissions by the defendant and Fanning which show the whole plan. Each admitted being married at the time they carried on their clandestine relations. They deny any sexual relations until after their purported marriage on May 1, 1954, but the acceptance of such evidence at its face value would tax the credulity of a self-respecting court. The record recites the story in detail and contains letters and notes in the handwriting of the defendant which show that her conduct was based on an illicit infatuation for Fanning and not on any cruelty towards her by the plaintiff. The record is clear, also, that Fanning alienated the affection of the defendant for her husband and brought about the dissolution of the family ties of the plaintiff and defendant. The evidence is clear that defendant and Fanning went to Florida for the sole purpose of securing a quick divorce. There was never any intent to establish a bona fide residence or domicile in that state. The evidence amply sustains the findings of the trial court to that effect.

It is the contention of the defendant that her Florida divorce was valid and that the courts of Nebraska are required to give full faith and credit to the divorce decree obtained in that state under the full faith and credit clause of the federal Constitution.

The Nebraska Uniform Divorce Recognition Act provides in part:

"A divorce from the bonds of matrimony obtained in another jurisdiction shall be of no force or effect in this state, if both parties to the marriage were domiciled in this state at the time the proceeding for the divorce was commenced." § 42-341, R. R. S. 1943.

"Proof that a person obtaining a divorce from the

bonds of matrimony in another jurisdiction was (1) domiciled in this state within twelve months prior to the commencement of the proceeding therefor, and resumed residence in this state within eighteen months after the date of his departure therefrom, or (2) at all times after his departure from this state, and until his return maintained a place of residence within this state, shall be prima facie evidence that the person was domiciled in this state when the divorce proceeding was commenced." § 42-342, R. R. S. 1943.

The Florida divorce was clearly void under the provisions of these sections of our statutes. Defendant did not obtain a bona fide residence in Florida as we have heretofore found from the evidence. Consequently her domicile remained in this state. The record shows also that the rule as to prima facie evidence contained in section 42-342, R. R. S. 1943, applies to her and that the evidence contained in the record is not sufficient to overcome it. The public policy of this state with reference to the obtaining of quick foreign divorces by residents of this state was clearly violated.

The correct rule is set forth in the case of Williams v. North Carolina, 325 U. S. 226, 65 S. Ct. 1092, 89 L. Ed. 1577, 157 A. L. R. 1366, as follows: "What is immediately before us is the judgment of the Supreme Court of North Carolina. We have authority to upset it only if there is want of foundation for the conclusion that that Court reached. The conclusion it reached turns on its finding that the spouses who obtained the Nevada decrees were not domiciled there. The fact that the Nevada court found that they were domiciled there is entitled to respect, and more. The burden of undermining the verity which the Nevada decrees import rests heavily upon the assailant. But simply because the Nevada court found that it had power to award a divorce decree cannot, we have seen, foreclose reexamination by another State. Otherwise, as was pointed out long ago, a court's record would establish its power and the power

would be proved by the record. Such circular reasoning would give one State a control over all the other States which the Full Faith and Credit Clause certainly did not confer. * * * If this Court finds that proper weight was accorded to the claims of power by the court of one State in rendering a judgment the validity of which is pleaded in defense in another State, that the burden of overcoming such respect by disproof of the substratum of fact—here domicil—on which such power alone can rest was properly charged against the party challenging the legitimacy of the judgment, that such issue of fact was left for fair determination by appropriate procedure, and that a finding adverse to the necessary foundation for any valid sister-State judgment was amply supported in evidence, we cannot upset the judgment before us. And we cannot do so even if we also found in the record of the court of original judgment warrant for its finding that it had jurisdiction. If it is a matter turning on local law, great deference is owed by the courts of one State to what a court of another State has done. * * * But when we are dealing as here with an historic notion common to all English-speaking courts, that of domicil, we should not find a want of deference to a sister State on the part of a court of another State which finds an absence of domicil where such a conclusion is warranted by the record."

This court has adhered to the foregoing rule. In Lippincott v. Lippincott, 141 Neb. 186, 3 N. W. 2d 207, 140 A. L. R. 901, we held that a decree of divorce rendered in another state may be collaterally attacked by showing that the court was without jurisdiction, either of the subject matter of the suit or of the person of defendant, without violating the full faith and credit clause of the federal Constitution. See, also, Anglim v. Anglim, 140 Neb. 133, 299 N. W. 346; Repp v. Repp, 156 Neb. 45, 54 N. W. 2d 238. This rule has been consistently adhered to by the Supreme Court of the United States where constructive service of process only has been had in

the state granting the divorce. Rice v. Rice, 336 U. S. 674, 69 S. Ct. 751, 93 L. Ed. 957; Sutton v. Leib, 342 U. S. 402, 72 S. Ct. 398, 96 L. Ed. 448.

A bona fide domicile in the state in which a decree of divorce is obtained is a jurisdictional matter. A bona fide domicile is necessary for the court to attain jurisdiction, and consequently a holding that it existed by the court granting a divorce is subject to attack by the spouse domiciled in another state. In Phillips v. Phillips, 146 Fla. 311, 1 So. 2d 186, the court said: "We may say here that the taking up of abode in Florida for the sole purpose of prosecuting a divorce suit is not the establishment of a bona fide residence in Florida. There must be coupled with the sojourn in the State the intent to make this State the legal residence of the plaintiff. The State is a party at interest in every divorce suit and, therefore, the courts should not allow the process of the State to be used by those who are not entitled to have its beneficent aid and protection. No hardship can be worked by requiring corroboration of the plaintiff's testimony both as to cause or ground for divorce and as to bona fide residence for the statutory period.

"Our conclusion is that the plaintiff in the court below failed to meet the burden of establishing the jurisdictional fact of residence in this State and that, therefore, the decree of divorce should not have been entered."

In Fairlamb v. Fairlamb, 156 Fla. 104, 22 So. 2d 580, the Florida court said: "Regardless of what he has stated his intention to be, our opinion is that the whole record shows that his pretended establishment of residence in Florida was for the purpose of procuring a divorce under the laws of the State of Florida and that his residence in the State of Florida, if any, was not sufficient to give the Circuit Court of Pinellas County jurisdiction of the subject matter and was not sufficient to comply with requirements of Sec. 65.02, supra. See Taylor v. Taylor, 132 Fla. 690, 182 So. 240; Mills v. Mills, 153 Fla. 727, 15 So. (2nd) 763; Phillips v. Phillips, 146 Fla. 394, 1 So.

(2nd) 186; and Minick v. Minick, 111 Fla. 620, 149 So. 483."

Under the holdings of the foregoing cases and the evidence adduced in the present record, it is clear that the defendant did not have a bona fide domicile in Florida sufficient for her to obtain a valid divorce. A bona fide domicile being a jurisdictional requirement, it is subject to collateral attack without violating the full faith and credit clause of the federal Constitution. The divorce decree being void, the purported subsequent marriage of the defendant is also void. Lippincott v. Lippincott, *supra;* Williams v. North Carolina, *supra;* Rice v. Rice, *supra;* Sutton v. Leib, *supra.*

The record shows conclusively that the defendant and Fanning have been cohabiting together as man and wife since May 1, 1954. This is nothing more than an adulterous cohabitation and amply supports the granting of a divorce to the plaintiff and a denial of alimony to the defendant.

The defendant contends that the trial court erred in granting the custody of the two minor children to the plaintiff. We are of the opinion that the evidence herein recited shows the unfitness of the defendant to have the custody of either or both of the minor children. With reference to the custody of the minor children, the evidence shows that on October 2, 1953, she abandoned her husband and her son, Stanley, then 12 years of age. She took Sylvia, aged 7 years, with her without the knowledge or consent of the plaintiff and thereby caused the child to become an innocent participant in the sordid mission in which she and Fanning were engaged. She has brought disgrace and humiliation upon her husband and her children. She now asks that she be given the custody of the children; and that they be required to live with her and Fanning while they continue to cohabit in an adulterous relationship. This court will not, under the circumstances here shown, grant any relief to her. She has forfeited any right she

may have had to the custody of her children because of her disgraceful conduct. One may not willfully destroy the family relationship as she has done and expect a court to give consideration to her to the detriment of the husband she has so grievously wronged. She argues that she has done nothing morally wrong; and that she has at all times kept within the letter of the law. This, of course, is not true. One who goes into another state to secure a divorce to meet the exigencies of the occasion does so at his peril. She may not be heard to say, after participating in a fraudulent plan to secure a quick divorce in another state, that her intentions were good and that she acted with the best of motives. The public policy involved, particularly one so important as that bearing upon the integrity of the marriage relation, and the duties and responsibilities arising therefrom, will not permit misconceptions of legal rights to be urged as a defense in such cases. One who toys with the laws of the states and their judicial processes must accept the consequences when his plans fall short of the anticipated result. The prayer of the defendant for the custody of the minor children was properly denied by the trial court.

The record discloses that plaintiff is a proper person to have the custody of the children. He has a well-furnished modern home with suitable assistance for caring for the children's well-being. Adequate school facilities are shown to be available. He has the financial means to care for them in a suitable manner. The trial court properly granted the custody of the children to the plaintiff.

The plaintiff has filed a cross-appeal. He complains therein that the trial court should have found the defendant guilty of adultery and taxed the costs to her. Defendant admitted living with Fanning as his wife after May 1, 1954. This undisputed evidence requires a finding that the charge of adultery was established. The decree is hereby amended to so find. It necessarily

.follows that the costs of the action should be taxed against the defendant. The decree is modified to so order. The costs in this court are likewise taxed to the defendant.

The decree in all other respects is correct. The decree as modified by this court is therefore affirmed.

AFFIRMED AS MODIFIED.