MICHAEL G. DEUTH, APPELLEE, V. EILEEN RATIGAN, APPELLANT.
590 N.W. 2d 366

Filed March 12, 1999.   No. S-97-1280.

Michael J. Leahy, of Fitzgerald, Schorr, Barmettler & Brennan, P.C., for appellant.

Daniel L. Johnson, of Latenser & Johnson, P.C., for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

STEPHAN, J.

Pursuant to the Nebraska Uniform Enforcement of Foreign Judgments Act (NUEFJA), Neb. Rev. Stat. §§ 25-1587.01 to 25-1587.09 (Reissue 1995), Michael G. Deuth filed a foreign judgment which he had obtained against Eileen Ratigan in the county court for Douglas County, Nebraska. The county court denied Ratigan's motion to vacate the judgment, and the district court for Douglas County affirmed. On her appeal to this court, we affirm in part, reverse in part, and remand with directions for further proceedings.

## BACKGROUND

Deuth obtained a default judgment against Ratigan in the district court for Black Hawk County, Iowa, on November 30, 1979. He filed the judgment in the Douglas County Court and mailed notice of the filing to Ratigan on September 12, 1995, pursuant to §§ 25-1587.03 and 25-1587.04. An execution was issued by the county court on September 18 and returned unsatisfied. The court then issued an "Order in Aid of Execution" which required Ratigan to appear for a hearing on November 6 to give testimony regarding her property. Upon Ratigan's failure to appear, an "Order to Appear and Show Cause" was issued by the court on November 9. When Ratigan again failed to appear, a capias was issued on January 5, 1996.

Ratigan entered her voluntary appearance on July 10, 1996, and moved to quash the capias. A hearing was held on July 18, but the bill of exceptions contains a notation that the tape recording of the proceeding had been erased, and thus there is no verbatim record.

The county court entered an order dated August 14, 1996, which referred to an evidentiary hearing, presumably that of July 18. The order also referred to Ratigan's motion to quash the capias, but primarily addressed her contention that the Iowa court lacked jurisdiction over her person when it entered the judgment. In this regard, the court found:

2. The issue at bar arises from evidence that is diametrically opposed. [Deuth] has submitted a copy of a return showing that [Ratigan] was personally served with service of process of the commencement of the Iowa law suit,

which resulted in a judgment in the State of Iowa and the subsequent registration in this state. [Ratigan], on the other hand, adduces evidence refuting that any such service of process was had upon [her].

3. It is absolutely impossible for this Court to determine whether [Ratigan] was ever properly served with process, and thus the question of whether the original forum court in the State of Iowa ever had jurisdiction over [Ratigan] is placed in doubt. While the full faith and credit clause of the federal constitution requires one state to give recognition to the judgments of another state, that recognition does not extend where the original jurisdiction of the original forum court is suspect, Yost v. Yost, 161 Neb. 164, 72 N.W.2d 689 (1955). In the case at bar, the jurisdiction of the Iowa court has most definitely been placed in a suspect category, and in such a circumstance it is appropriate for this Court to defer any further post-judgment proceedings against [Ratigan], until after the validity of the Iowa judgment has been determined in the original forum court.

Based upon these findings, the county court canceled the capias; barred further efforts to collect the Iowa judgment until further order of the court; and stated that it would review the matter on November 1, 1996, to determine "what action, if any, [Ratigan] has taken to set aside or invalidate the original judgment entered in the State of Iowa." The court concluded:

It is incumbent upon [Ratigan] to take action to set aside that judgment, and to do so expeditiously, since any further proceedings in the State of Nebraska are based on a determination of the validity of the Iowa judgment. If [Ratigan] does not expeditiously seek to have the original Iowa judgment set aside, between now and November 1, 1996, this Court will have no choice but to then grant full faith and credit to the Iowa judgment and allow post-judgment proceedings.

On August 21, 1996, Ratigan filed a motion requesting the county court to vacate the Iowa judgment. In her motion, Ratigan asserted that the proceeding was barred under Neb. Rev. Stat. § 25-205 (Reissue 1995), which establishes a 5-year limitation period for an "action upon a . . . foreign judgment."

In the alternative, Ratigan asserted that the Iowa judgment was unenforceable because execution had not occurred within 5 years as required by Neb. Rev. Stat. § 25-1515 (Reissue 1995).

The county court entered an order on October 7, 1996, which refers to a September 19 hearing on Ratigan's "Motion to Vacate Judgment." The bill of exceptions reflects that the tape recording of this hearing also was erased, and thus we have no verbatim record. In its October 7 order, the county court did not rule on the motion to vacate but again instructed Ratigan to have the validity of the judgment determined by the Iowa court, and further stated that it would review the matter on December 2 to determine whether Ratigan had complied with this order. The order concluded: "In the event no such action has been taken by December 2, 1996, this Court will thereafter allow execution to follow on its judgment."

On its own motion, the county court then set a hearing "for a determination as to what further proceedings should be held herein." At the hearing held on February 20, 1997, Ratigan's counsel advised the court that Ratigan could not afford counsel to challenge the judgment in Iowa pursuant to the court's previous direction but was willing to testify regarding her claim that the judgment was obtained without personal service upon her. Noting that it had previously ordered Ratigan to have the validity of the Iowa judgment determined by an Iowa court, the county court stated:

> The point is, is that you have got to get that Iowa judgement set aside and until you do, you are never going to get the problem cured. They can file their judgement in South Dakota and then refile it here. And then do we have to grant — even if we would find it to be an invalid judgement. So I guess what I — how do I have to get it through to you and your counsel that I don't want to have to keep coming back here unless you go to Iowa and do something about the Iowa judgement. Now, we have wasted how many months and you have done absolutely nothing to get the Iowa judgement set aside. I mean you may have — I'm sure that's probably inaccurate to say absolutely nothing. You have collected a lot of information, but until you set foot in the Iowa courtroom over there and ask that Court,

whatever it might be, to vacate that old judgement, you are not going to get anywhere in my court, because that is what I have ordered you to do. Otherwise we just spin our wheels forever.

Ratigan's counsel then suggested that the judge enter a final order so that an appeal could be taken. On April 16, 1997, the county court entered an order finding that "the evidence adduced by [Ratigan] in this foreign judgment proceeding is not sufficient to convince this Court that the Iowa court had no jurisdiction" and thus determined that there was "no basis to vacate the registration of the Iowa judgment." In the same order, the county court found in favor of Deuth on the "statute of limitations issues." It concluded that the "foreign judgment previously registered herein shall remain in full force and effect."

On May 15, 1997, Ratigan filed her notice of appeal to the district court. In her "Statement of Errors" filed in the district court, Ratigan asserted that the county court erred (1) in ruling that she was not entitled to attack the validity of the Iowa judgment in the county court; (2) in prohibiting her from offering evidence on the question of whether the Iowa court had jurisdiction over her person when it entered the judgment; and (3) in ruling that Iowa law provided the applicable limitations period "for the registration and/or enforcement" of the foreign judgment.

On November 4, 1997, the district court affirmed the judgment of the county court, based upon a determination that the Iowa judgment was valid on its face, that the Iowa court "was not shown to be lacking in jurisdiction to enter the judgment" and that "[a]ny limitations on enforceability in the State of Nebraska would begin from the date the valid judgment is registered in this state." Ratigan perfected this appeal, which we moved to our docket pursuant to our statutory authority to regulate the caseloads of the appellate courts.

## STANDARD OF REVIEW

On questions of law, a reviewing court has an obligation to reach its own conclusions independent of those reached by the lower courts. *Brunges v. Brunges*, 255 Neb. 837, 587 N.W.2d 554 (1998).

The admissibility of evidence is reviewed for abuse of discretion where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court. *Carpenter v. Cullan*, 254 Neb. 925, 581 N.W.2d 72 (1998); *Menkens v. Finley*, 251 Neb. 84, 555 N.W.2d 47 (1996).

## ASSIGNMENTS OF ERROR

Ratigan asserts that the courts below erred in (1) determining that the Iowa judgment was not barred by Nebraska's 5-year statute of limitations for enforcing actions on foreign judgments and (2) ruling that she was not entitled to collaterally attack the jurisdiction of the Iowa court in Nebraska.

## ANALYSIS

### APPELLATE JURISDICTION

Deuth argues that the final order of the county court was the August 14, 1996, order on the motion to quash and that because Ratigan failed to appeal that order within 30 days, neither the district court nor this court has appellate jurisdiction. Ratigan counters that there was no final order until April 16, 1997, and that she properly filed her notice of appeal on May 15. Where the court from which an appeal was taken lacked jurisdiction, the appellate court acquires no jurisdiction. *In re Complaints of McLeod Telemanagement et al.*, 255 Neb. 202, 583 N.W.2d 39 (1998). Therefore, we must determine whether Ratigan properly filed her appeal to the district court, as it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it. *State v. Silvers*, 255 Neb. 702, 587 N.W.2d 325 (1998).

In its order of August 14, 1996, the county court stated that if Ratigan failed to have the judgment set aside by an Iowa court, it would enter an order enforcing the judgment in Nebraska. We have held that orders which specify that a trial court will exercise its jurisdiction based upon future action or inaction by a party are conditional and therefore not appealable. See *State ex rel. Fick v. Miller*, 252 Neb. 164, 560 N.W.2d 793 (1997) (judgment awarding attorney fees in amount to be determined at later date was not final, appealable order); *Village of Orleans v. Dietz*, 248 Neb. 806, 539 N.W.2d 440 (1995) (judgment imposing fine which could be reduced by defendant's

actions was not final order); *Schaad v. Simms*, 240 Neb. 758, 760, 484 N.W.2d 474, 475 (1992) ("'conditional orders purporting to automatically dismiss an action upon a party's failure to act within a set time are void as not performing in praesenti, and thus have no force or effect'"), quoting *Schoneweis v. Dando*, 231 Neb. 180, 435 N.W.2d 666 (1989); *Brozovsky v. Norquest*, 231 Neb. 731, 733, 437 N.W.2d 798, 800 (1989) ("'"[w]hen no further action of the court is required to dispose of the cause pending, it is final; when the cause is retained for further action . . . it is interlocutory'"'"), quoting *Anson v. Kruse*, 147 Neb. 989, 25 N.W.2d 896 (1947).

In this case, the August 14, 1996, order was conditional because it contemplated further action by the parties and the court. The subsequent order entered by the county court on April 16, 1997, resolved Ratigan's challenge of the validity of the registered judgment against her and thus constituted a final order affecting a substantial right. Her subsequent appeals were perfected in a timely manner, and we therefore have appellate jurisdiction.

### STATUTE OF LIMITATIONS

Ratigan argues that because the judgment was registered in Nebraska more than 5 years after its entry, this enforcement proceeding is barred by § 25-205, which provides in part that "an action upon a . . . foreign judgment, can only be brought within five years." Deuth contends that the 20-year limitation period for the enforcement of judgments as set forth in "Iowa Code Section 614.1" is applicable, brief for appellee at 10, and the judgment was therefore enforceable as of the date it was filed in Nebraska. Whether the statute of limitations of a sister state or that of Nebraska applies in a given case is a question of law which an appellate court must decide independently of the conclusion reached by the trial court. *Whitten v. Whitten*, 250 Neb. 210, 548 N.W.2d 338 (1996).

Statutes relating to the same subject matter will be construed to maintain a sensible and consistent scheme, so that effect is given to every provision. *State ex rel. City of Elkhorn v. Haney*, 252 Neb. 788, 566 N.W.2d 771 (1997). Section 25-205 is included in chapter 25, article 2, of the Nebraska Revised Statutes, which governs civil actions. See Neb. Rev. Stat.

§ 25-201 et seq. (Reissue 1995). Section 25-201 states that "[c]ivil actions can only be commenced within the time prescribed in this chapter, after the cause of action shall have accrued." Section 25-204 provides that "[c]ivil actions, other than for the recovery of real property, can only be brought within the following periods, after the cause of action shall have accrued." Reading these statutes together, it is clear that the word "action" as used in § 25-205 refers to a "civil action." Thus, we must determine whether this enforcement proceeding under the NUEFJA is a "civil action" to which § 25-205 applies.

This court stated in *Miller v. Walter*, 247 Neb. 813, 816, 530 N.W.2d 603, 605 (1995), that the NUEFJA "provides the statutory framework for bringing an action on a foreign judgment in this state." *Miller* involved an enforcement action brought pursuant to the NUEFJA adopted from the 1948 version of the Uniform Enforcement of Foreign Judgments Act (UEFJA). See Neb. Rev. Stat. §§ 25-1587 to 25-15,105 (Reissue 1989). The NUEFJA required the judgment creditor to file a "petition for registration," § 25-1589, and have summons issued and served "as in an action brought upon the foreign judgment," § 25-1590. The NUEFJA further provided that "[a]ny defense, setoff or counterclaim, which under the law of this state may be asserted by the defendant in an action on the foreign judgment may be presented by appropriate pleadings and the issues raised thereby shall be tried and determined as in other civil actions." § 25-1594.

Effective January 1, 1994, the NUEFJA based on the 1948 version of the UEFJA was repealed and replaced with the NUEFJA adopted from the 1964 version of the UEFJA which is now codified at §§ 25-1587.01 to 25-1587.09 (Reissue 1995). See 1993 Neb. Laws, L.B. 458. Unlike its predecessor, the current version of the NUEFJA does not provide for pleadings or trial. Instead, it provides that when the foreign judgment is filed in the office of the clerk of a Nebraska court of competent jurisdiction, the judgment "is subject to the same procedures, defenses, and proceedings for reopening, vacating, or staying as a judgment of a court of this state and may be enforced or satisfied in like manner." § 25-1587.03.

We have not previously considered whether a proceeding to enforce a foreign judgment under the current version of the NUEFJA is a "civil action" within the meaning of our statutes of limitations applicable to such actions. This issue was addressed, apparently for the first time by any state court, in *Producers Grain Corporation v. Carroll*, 546 P.2d 285 (Okla. App. 1976). Noting that the 1964 version of the UEFJA was intended to eliminate certain procedural steps required to enforce a foreign judgment under the 1948 version of the UEFJA, the Oklahoma Court of Appeals concluded that an enforcement proceeding under the 1964 version of the UEFJA did not come within the scope of a statute of limitations applicable to civil actions to enforce foreign judgments because under the current version of the UEFJA, the foreign judgment becomes legally enforceable upon filing and notice without the necessity of a separate action.

Applying similar rationale, other courts have held that the filing of a foreign judgment under the 1964 version of the UEFJA is not subject to a statute of limitations applicable to actions to enforce foreign judgments. See, *Hill v. Value Recovery Group, L.P.*, 964 P.2d 1256 (Wyo. 1998) (filing of foreign judgment under UEFJA not "civil action" within meaning of state statute of limitations); *Wright v. Trust Company Bank*, 219 Ga. App. 551, 552, 466 S.E.2d 74, 75 (1995) (state statute of limitations not applicable to filings under UEFJA, "[r]ather, a foreign judgment so filed stands in the same shoes as a judgment of the court in which it is filed"); *Hunter Technology, Inc. v. Scott*, 701 P.2d 645 (Colo. App. 1985) (filing procedure under UEFJA not action within state statute of limitations).

Some courts have taken a different approach, holding that the filing of a foreign judgment under the UEFJA is subject to the statute of limitations of the state in which the filing is made. For example, in *Eschenhagen v. Zika*, 144 Ariz. 213, 696 P.2d 1362 (Ariz. App. 1985), the Arizona Court of Appeals concluded that nothing in the UEFJA precluded it from applying the Arizona statute of limitations applicable to enforcement of foreign judgments in determining whether a foreign judgment is enforceable under the UEFJA. In distinguishing the contrary result in *Producers Grain Corp. v. Carroll, supra,* the court noted that

the Arizona statute of limitations did not contain language limiting its applicability to "civil actions." In reaching the same result as *Eschenhagen*, the court in *Lawrence Systems v. Superior Feeders Inc.*, 880 S.W.2d 203, 207 (Tex. App. 1994), also noted that the Texas statute of limitations at issue was not limited to "civil actions." Additionally, some state courts have reasoned that a statute of limitations applicable to common law actions to enforce foreign judgments should be applied to enforcement proceedings under the UEFJA, since both have the same purpose and application of different limitations periods would lead to anomalous results. See, *National Union Fire Ins. v. Nicholas*, 438 Pa. Super. 98, 651 A.2d 1111 (1994); *Alexander Construction Co. v. Weaver*, 3 Kan. App. 2d 298, 594 P.2d 248 (1979).

We agree with the observation of the Supreme Court of Wyoming in *Hill v. Value Recovery Group, L.P., supra*, that the courts in *Eschenhagen* and *Lawrence Systems* "seem to confuse filing a judgment under the Uniform Enforcement of Foreign Judgments Act with commencing an action to enforce a foreign judgment." 964 P.2d at 1259. As noted above, the Nebraska statutes of limitations, including § 25-205, apply to "civil actions." See §§ 25-201 and 25-204. For purposes of computing the period of limitations, "[a]n action is commenced on the date the petition is filed with the court." Neb. Rev. Stat. § 25-217 (Reissue 1995). The NUEFJA in its current form does not require or permit the filing of a petition or the utilization of any other prejudgment pleadings or procedures applicable to civil actions in this state. Upon filing of the foreign judgment pursuant to § 25-1587.03 and notice to the judgment debtor pursuant to § 25-1587.04, the foreign judgment becomes enforceable in the same manner as a judgment of a Nebraska court without the necessity of a separate "action." Therefore, we hold that the filing of a foreign judgment in a Nebraska court pursuant to § 25-1587.03 is not an "action upon a . . . foreign judgment" within the meaning of § 25-205.

The NUEFJA recognizes an "optional procedure" whereby a judgment creditor may "bring an action to enforce his or her judgment instead of proceeding under the [NUEFJA]." § 25-1587.07. A common-law action to enforce a foreign judg-

ment would constitute a civil action subject to the limitations contained in § 25-205, while under our holding today, enforcement of the foreign judgment pursuant to the NUEFJA would not. Although we acknowledge this potential anomaly, we observe that its resolution would require legislative action.

### COLLATERAL ATTACK: JUDGMENT ENTERED WITHOUT PERSONAL JURISDICTION

Ratigan's second assignment of error asserts that both the county and district courts abused their discretion in not allowing her to collaterally attack the Iowa judgment in Nebraska. In *Olson v. England*, 206 Neb. 256, 260, 292 N.W.2d 48, 50 (1980), a common-law action to enforce a foreign judgment, we stated: "There can be no doubt as to the general principle that a judgment of a foreign state can be collaterally attacked by evidence that the court was without jurisdiction." Further,

> "[a] judgment rendered in one State is subject to collateral attack in another State on the ground that the State in which the judgment was rendered had no jurisdiction over the defendant or over the subject matter, even though it appears in the judgment record that the court had jurisdiction and extrinsic evidence is necessary to establish its invalidity. . . ."

*Id.*, quoting Restatement of Judgments § 12, comment *c.* at 71 (1942). If a judgment on its face appears to be one entered by a court with jurisdiction, such jurisdiction " 'will be presumed, unless disproved by extrinsic evidence or by the record itself.' " *Olson*, 206 Neb. at 264, 292 N.W.2d at 52, quoting *Repp v. Repp*, 156 Neb. 45, 54 N.W.2d 238 (1952). We reaffirmed *Olson* in *First Fed. Sav. & Loan Assn. v. Wyant*, 238 Neb. 741, 746, 472 N.W.2d 386, 390 (1991), finding that "[w]hile it is presumed that a foreign court rendering a judgment had jurisdiction over the parties, a foreign judgment can be collaterally attacked by evidence that the rendering court was without such jurisdiction . . . ."

Similarly, we have held that a foreign judgment can be collaterally attacked in a Nebraska enforcement action brought pursuant to the NUEFJA adopted from the 1948 version of the UEFJA based upon evidence that the rendering court was without jurisdiction over the parties or the subject matter.

*Walksalong v. Mackey*, 250 Neb. 202, 549 N.W.2d 384 (1996); *Miller v. Walter*, 247 Neb. 813, 530 N.W.2d 603 (1995). It follows that the same principle should apply to a foreign judgment filed in a Nebraska court pursuant to the current version of the NUEFJA, which provides that when so filed, the foreign judgment "has the same effect and is subject to the same procedures, defenses, and proceedings for reopening, vacating, or staying as a judgment of a court of this state." § 25-1587.03. A judgment entered by a Nebraska court which lacks jurisdiction over the parties or subject matter is void and therefore subject to collateral attack. *Kuhlmann v. City of Omaha*, 251 Neb. 176, 556 N.W.2d 15 (1996); *Ehlers v. Grove*, 147 Neb. 704, 24 N.W.2d 866 (1946). See, also, *In re Interest of Joshua M. et al.*, 251 Neb. 614, 558 N.W.2d 548 (1997) (stating that collateral attacks on previous proceedings are impermissible unless grounded upon court's lack of jurisdiction over parties or subject matter). Therefore, we hold that a foreign judgment filed in a Nebraska court pursuant to § 25-1587.03 may be collaterally attacked on the ground that the court which entered the judgment lacked jurisdiction to do so, and the resolution of this issue must be made by the Nebraska court. When Deuth filed his judgment in the Douglas County Court, Ratigan had a right to have that court decide whether her claim that the judgment was void and unenforceable because the Iowa court lacked jurisdiction over her person when it rendered the 1979 judgment was legitimate. The county court abused its discretion by requiring that Ratigan obtain a determination of this issue by an Iowa court and refusing to permit her to offer evidence at the February 20, 1997, hearing.

Error may not be predicated upon a ruling which excludes evidence unless a substantial right is affected and "the substance of the evidence was made known to the judge by offer or was apparent from the context within which questions were asked." Neb. Rev. Stat. § 27-103(1)(b) (Reissue 1995); *Allphin v. Ward*, 253 Neb. 302, 570 N.W.2d 360 (1997). Although Ratigan was present and apparently ready to testify at the February 20, 1997, hearing, no formal offer of proof was made concerning her proposed testimony. However, the record reflects the following statement made by her counsel:

If — if you read the original petition in this matter it was for wages owed to Rainbow. Eileen was just an employee of Rainbow. She has talked to someone who is still there, who was there back in '79. He is willing to testify and confirm that Eileen did not — was not working for Rainbow at the time that the judgement — or that the service allegedly occurred; and the service allegedly occurred at Rainbow. Eileen has — has also tried to track down her landlord at that time. She was living in Milwaukee at the time that she was allegedly served in Des Moines in this action and she has attempted to try and locate her landlord to — to get some evidence. She doesn't have any evidence from 17 years ago and she's trying to get some to show to this Court that she was not living in Des Moines or even the state of Iowa at the time that she was originally served. And she is certainly willing to take the stand and testify that she did not live there.

This record is sufficient for us to determine the substance of Ratigan's proposed testimony. If proved, Ratigan's absence from the State of Iowa on the date she was allegedly served with summons there would be relevant to the issue of whether the Iowa court had personal jurisdiction to enter the judgment which is the subject of this proceeding. The refusal of the county court to receive this testimony on the ground that Ratigan was obligated to have the issue determined by an Iowa court is an error requiring reversal because it affected Ratigan's substantial right to collaterally attack the foreign judgment in the Douglas County Court.

## CONCLUSION

We affirm that portion of the judgment of the district court affirming the judgment of the county court which determined that Deuth's filing of the Iowa judgment pursuant to the NUEFJA is not time barred. However, we reverse that portion of the judgment which determined that the Iowa court was not shown to lack jurisdiction to enter the judgment because the county court erred in not permitting Ratigan to offer testimony on this issue at the hearing on February 20, 1997. We therefore remand the cause to the district court with directions to remand

to the county court for an evidentiary hearing and determination of Ratigan's claim that the foreign judgment is void and unenforceable because it was entered by a court which lacked jurisdiction over her person.

AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED WITH DIRECTIONS FOR FURTHER PROCEEDINGS.