THE STATE MUTUAL INSURANCE COMPANY v. E. O.
CLEVENGER.

(Filed September 4, 1906.)

1.  STATUTES—Language of—Construction. Where the language of
    an act of the legislature is dubious, the court, in construing it,
    will consider the reason and intent of the law, to determine its
    scope and true meaning.

2.  SAME—"Crop." The word "crop," in its broadest signification,
    means the products of the soil which are grown and raised an-
    nually, and gathered during a single season.

3.  SAME—Growing Cotton. The words "other crops," as used in
    sec. 5, art. 1 of the Session Laws of 1889, which provides that:
    "The association may insure grain in bins and stacks, growing
    wheat, rye, barley, flax, oats, and other crops," etc., includes
    growing cotton.

(Syllabus by the Court.)

*Error from the Probate Court of Washita County; before
Richard A. Billups, Trial Judge.*

*J. A. Duff* and *Massingale & Shean,* for plaintiff in er-
ror.

*James W. Smith* and *T. A. Edwards,* for defendant in
error.

STATEMENT OF FACTS.

This was an action brought by the State Mutual Insur-
ance Company against E. O. Clevenger, to recover on a note
executed by the defendant to the plaintiff on June 7, 1904.
The note was given for premium on insurance against hail
upon a growing crop of cotton. The defendant interposed
a demurrer to the plaintiff's cause of action, which demur-
rer was sustained, and the plaintiff declining to plead fur-

ther, judgment was rendered in favor of the defendant for the costs of the action. The plaintiff appeals.

Opinion of the court by

HAINER, J.: But one question is presented for our consideration, and that is the construction of section 5, article 1, chapter 17, of the Session Laws of 1899, which provides, that:

"The association may insure grain in bins and stacks, growing wheat, rye, barley, flax, oats and other crops. * * *."

It is contended by defendant in error that the words "other crops" do not include growing cotton, and that hence the plaintiff did not state facts sufficient to constitute a cause of action, and the demurrer was therefore rightfully sustained. The decision of this question, then, depends upon the interpretation to be placed upon the words "other crops," as used in this section of the act. The word "crop" has a broad and comprehensive meaning. We think the clear intent and purpose of the act was to include growing cotton, and all annual products of the soil. The court will take judicial knowledge of the fact that the growing of cotton is one of the leading, and one of the most lucrative, agricultural pursuits of the people of Oklahoma; and it seems to us it would be placing a very narrow construction upon the statute, to hold that the words "other crops" do not include cotton.

One of the best definitions we have been able to find of the word "crop" is contained in the Am. & Eng. Enc. Law, vol. 8, p. 302, where the word is defined as follows:

"The word 'crop.' in its general signification, means the product of cultivated plants while growing; or that product

after it has been harvested or severed from the stalk or root to which it was attached."

In *Cottle v. Spitzer*, 4 Pac. 435, the supreme court of California quoted with approval the following language of the superior court in construing the term "growing crops."

"* * * We proceed to inquire the meaning of the term 'growing crops,' as used in the organic law. 'Crop' as defined by Webster is (3) that which is gathered; the corn or fruits of the earth collected; harvest; the word includes every species of fruit or product gathered for man or beast; (4) corn or other cultivated plants while growing, (a popular use of the word); (5) anything cut off or gathered.' The etymology of the word, 'crop' appears to be from the Saxon 'crop' or 'cropp,' signifying the crop of a fowl, a cluster of ears of corn, grapes, ears of corn, and from the Welsh 'cropiad,' a gathering or taking hold of. Webst. *verb.* 'Crops.' The definition given by Webster is even broader than the popular signification of the word. Under the former as we see, not only is meant grain produced from annual vegetation, but also fruits from trees and perennial plants. But it is at least doubtful if, under the common and restrictive acceptation of the term, anything more would be understood than products from annual plants, as cereals, maize, etc., and the latter appears to be the sense in which the term is employed in technical legal parlance. 'Crop,' says Bouvier, 'is nearly synonymous with emblements,' and by this term is understood the crops growing upon the land. By crops is here meant the products of the earth which grows yearly, and are raised by the annual expense and labor, or 'great manurance and industry,' such as grain; but not fruits which grow on trees, which are not planted yearly, or grasses and the like, though they are annual.'—Bouv. Law. Dict. word, 'Emblements.' "

Webster's International Dictionary defines "crops" as follows: "That which is cropped, cut or gathered from a sin-

gle field, or of a single kind of grain or fruit of any single season; especially the product of what is planted in the earth; fruit; harvest. Grain or other product of the field while standing.".

In *Goodrich v. Stevens*, 5 Lans. (N. Y.) 230, it was held that:

"A crop is, primarily, some product of the soil, gathered during a single year."

One of the cardinal rules for the interpretation of statutes, where the language is dubious, is to discover the intent of the lawmaking power. It seems to us that the reason and spirit of the law was to authorize the association to insure not only the growing crops specifically enumerated in the act, but all other annual crops produced in Oklahoma, and this is particularly true of one of the staple products of this country. To hold otherwise would be, in our opinion, contrary to reason and common sense, and where the reason ceases, the law ought to cease.

We therefore hold that the word "other crops" include growing cotton, and hence the plaintiff was authorized to insure the defendant's cotton against loss by hail, and to take a note for the premium. It follows that the petition stated facts sufficient to constitute a cause of action, and the court erred in sustaining the demurrer thereto.

The judgment of the probate court is reversed, and the cause remanded with directions to overrule the demurrer to the plaintiff's petition.

All the Justices concurring.