IN RE ESTATE OF AGNES N. PARKER, DECEASED.
LESLIE D. PARKER, APPELLANT, v. JOHN H. COMSTOCK, ADMINISTRATOR OF THE ESTATE OF AGNES N. PARKER, DECEASED, ET AL., APPELLEES.
128 N. W. 2d 696
Filed May 29, 1964. No. 35608.

Joseph J. Cariotto and Louis B. Finkelstein, for appellant.

Perry & Perry, Winfield M. Elmen, and Muffly & Snyder, for appellees.

Heard before WHITE, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

SPENCER, J.

This is an appeal by Leslie D. Parker from the dismissal of his claim as the surviving husband of Agnes N. Parker, deceased. The county judge of Lancaster County entered an order finding Leslie D. Parker to be the surviving husband of Agnes N. Parker, deceased. John H. Comstock, administrator of the estate of Agnes N. Parker, deceased, appealed to the district court. The district court found that Leslie D. Parker was bound by a property settlement agreement in a divorce action and had no right, title, or interest in the real estate and personal property of Agnes N. Parker, deceased. It reversed and set aside the order of the county judge and ordered the claim dismissed. Leslie D. Parker perfected an appeal to this court.

This case was consolidated for trial in the district court with two other cases, with the understanding that the adjudications therein, while made independently, would be consistent with each other. One of them, an action to enforce a contract and agreement and to quiet title to real estate, was brought by Mayme Neylon against Leslie D. Parker and John H. Comstock, the administrator of the estate of her sister Agnes N. Parker, deceased, and other named heirs. This case, No. 35598, was also appealed to this court and the opinion therein, Neylon v. Parker, is found *ante* p. 187, 128 N. W. 2d 690. The third case, which was an appeal from the disallowance of certain claims, was disposed of in the lower court.

For convenience, Leslie D. Parker will hereinafter be

referred to as plaintiff; John H. Comstock, administrator of the estate of Agnes N. Parker, deceased, will be referred to as administrator; and Agnes N. Parker, deceased, will be referred to as deceased.

Plaintiff's petition on appeal alleged the marriage of the parties on May 29, 1946, and the death of deceased on July 6, 1961, while the marriage relation still existed. He alleged that deceased died childless and intestate, and that her estate had been filed for administration in the county court of Lancaster County, Nebraska. As surviving husband he claimed that he was entitled to the allowances specified in section 30-103, R. R. S. 1943; a homestead interest in certain property described as an undivided one-half interest in Lot 136, Irregular Tract in the Northwest Quarter of the Northwest Quarter of Section 6, Township 9 North, Range 7, in the city of Lincoln, Lancaster County, Nebraska, which for convenience will hereinafter be referred to as 2731 Van Dorn Street; and a one-half interest in addition thereto in the estate of the deceased. The answer of the administrator admitted the marriage of the parties; the death of the deceased; that deceased left no surviving children; and the pendency of the estate proceedings in the county court. The administrator specifically alleged that the parties were divorced and were not husband and wife at the time of the death of the deceased; that the parties had entered into a property settlement agreement which was incorporated into the divorce decree entered February 8, 1961; and that the plaintiff is now estopped to claim that he is the surviving husband of the deceased. The administrator further alleged that the one-half interest of the deceased in 2731 Van Dorn Street was inherited from a prior husband, and that by virtue thereof the rights of homestead therein which were set off to her in that estate terminated with her death.

A stipulation was filed in the district court waiving a jury trial. This was unnecessary. The appeal being

one for statutory allowances, rights of homestead, and a determination of the interest of a surviving spouse, it is triable to the court as a suit in equity. § 30-1606, R. R. S. 1943. It is here for trial de novo. § 25-1925, R. R. S. 1943. See, also, In re Estate of Waller, 116 Neb. 352, 217 N. W. 588, which involved the validity of an antenuptial agreement, in which we said that when an action in equity is appealed, it is the duty of this court to try the issues de novo and to reach an independent conclusion without reference to the findings of the district court.

Plaintiff alleges 10 assignments of error, but there is no need to detail them herein. There are only two questions involved: Is plaintiff estopped by virtue of a property settlement; and, if not, does he have homestead rights in 2731 Van Dorn Street?

Plaintiff is still the surviving husband of the deceased. Section 42-340, R. R. S. 1943, provides that a decree of divorce shall not become final or operative until 6 months after trial and decision, except for the purpose of review by appeal. The divorce herein had never become final because the deceased died within the 6-month period. As we said in Williams v. Williams, 146 Neb. 383, 19 N. W. 2d 630: "When the marriage relation is extinguished by death prior to the time when the decree can go into effect, then the subject matter is gone, and the parties can never be divorced by operation of law."

The plaintiff offered in evidence the petition for divorce, the answer and cross-petition, and the decree. The administrator offered the transcript of the evidence adduced in the divorce hearing. Deceased's petition prayed for an absolute divorce; that her separate property be set off to her; that an order be made determining the property rights of the parties; and for alimony. Plaintiff's answer and cross-petition prayed for a divorce; his personal possessions; and an equitable division of the joint accumulation of the parties. The decree found

certain securities in the names of both parties had been purchased with the funds of the deceased, and awarded them and all other securities in the names of both parties to the deceased. It found that certain furniture, household goods, and equipment had been purchased with joint funds, and awarded all of the furniture, household goods, and equipment to the deceased. All interest in real property was determined to be the separate property of the deceased, and was awarded to her. She was also awarded a 1956 automobile; $200 alimony; and a $300 attorney's fee. The only provision made for the plaintiff was the following: "8. That defendant is awarded all personal property of the defendant in the possession of the plaintiff which includes but is not limited to a family Bible, golf clubs and equipment, an air force overcoat, air force personnel papers and other documents, a collection of ivory statues and statuettes, clothing, a trunk with contents, an insurance policy on the life of defendant in the Lafayette Insurance Company and any other insurance policies belonging to said defendant, said property to be released to the defendant by the plaintiff upon demand of the defendant."

Although the plaintiff and counsel were present at the divorce hearing, it was handled as a default. The only witnesses were the deceased and her sister. The deceased's testimony as to her property is sketchy, and while immaterial herein, the corroboration is even more so. There is no testimony in the record as to the property of the husband, the plaintiff herein. If there was a property settlement agreement, no evidence was adduced on it.

The administrator, who had represented the deceased in the divorce proceeding but who had expected to be busy when the case was set for hearing and arranged for other counsel at the hearing, testified as to conferences with the plaintiff's attorney over a period of several months. He testified he attempted to arrive at a property settlement; and that the attorneys discussed

the properties of the parties and reached certain conclusions, subject to the approval of their clients. It was his testimony that the property awarded to the plaintiff in the divorce decree is the identical property the attorneys agreed he should receive; and that he prevailed on the deceased to proceed on the basis of the settlement reached between the attorneys. The provisions of the decree as to the delivery of this property to the plaintiff were carried out except for two ivory statuettes and the Bible, which could not be found at the time of the delivery of the property to the plaintiff. The ivory statuettes are in the possession of the administrator, and the Bible is in the possession of the attorney for Mayme Neylon. The court costs, attorney's fees, and the alimony were all paid by the plaintiff.

The version of the conversation given by plaintiff's attorney was to the effect that the deceased was at all times demanding from $5,000 to $8,000 alimony. He testified that he did not discuss a property settlement with deceased's attorney but whether or not his client was to pay alimony, which he refused to do. He testified that deceased's attorney told him that he was unable to learn exactly what property the deceased had. In any event, it is evident that the plaintiff received nothing under the decree except his own personal property, although the deceased up to the time of the decree did want and demand a ring and the ivory statuettes.

The administrator argues that the situation in this case is in effect a valid separation agreement and should be governed by the rules laid down in Amspoker v. Amspoker, 99 Neb. 122, 155 N. W. 602; In re Estate of Lauderback, 106 Neb. 461, 184 N. W. 128; and Ladman v. Ladman, 130 Neb. 913, 267 N. W. 188. With this we do not agree. These cases involved situations where a husband and wife, although legal grounds for divorce existed, elected to permanently separate and to make a complete settlement of their property rights, and specifically waived or released all claims of inheritance

in the property of the other. What happened in this case is the usual occurrence in most divorce cases where there is contention between the parties. Here no separation agreement was contemplated or made nor was there ever a full and complete disclosure on the part of the deceased as to the exact extent of her holdings. She was insisting on portions of the plaintiff's property, but was disclosing no information as to her own.

The administrator relies on Holmberg v. Holmberg, 106 Neb. 717, 184 N. W. 134, in which we said: "In such action, where, as a part of the decree, alimony was allowed and fully paid before the death of the party, the alimony judgment was not affected by the death of the party, and the court has no power to vacate the judgment or dismiss the action."

Holmberg v. Holmberg, *supra*, involved an application in the divorce court to vacate the decree filed in the divorce action. In that case we also said: "The ultimate purpose of the requested vacation of the divorce decree is to establish the defendant's property rights as the widow of the deceased plaintiff in his estate. All the avenues are open for the determination of such rights in the proper courts, where all the parties affected can be heard, and in such tribunals she can establish her status as the widow of the deceased plaintiff. Chase v. Webster, 168 Mass. 228; Matter of Crandall, 196 N. Y. 127, 17 Ann. Cas. 874; Estate of Seiler, 164 Cal. 181, Ann. Cas. 1914B, 1093." The instant case is an appeal from a determination of the probate court as to the rights of plaintiff as a surviving husband, and it is a proceeding brought in the proper court.

In Sovereign Camp, W. O. W. v. Billings, 107 Neb. 218, 185 N. W. 426, we said: "Though the statute cited, purporting to prevent the abatement of pending actions, be given a most liberal interpretation, it could not prevent an action in divorce from abating when death occurs at a time before a decree can become operative, for death would, as pointed out in the Holmberg case, ex-

tinguish the marriage status and destroy the subject-matter which forms the basis of the action. Under our interpretation of the divorce statute (Rev. St. 1913, sec. 1606), providing that the decree of divorce shall not become 'operative until six months after trial and decision except for the purpose of review by proceedings in error or by appeal, and for such purposes only,' the status of the divorce proceeding, during the six months immediately following the entry of the decree, is that of a pending action. Everson v. Everson, 101 Neb. 705; Blakely v. Blakely, 102 Neb. 164. During the entire pendency of that decree, the marital relation continues. The decree cannot, under the law, take effect and dissolve the marriage until at the expiration of the six months' period. In order that a marriage status be dissolved by a decree of divorce, such status obviously must exist at the time of the taking effect of the decree. When the marriage relation is extinguished by death prior to the time when the decree can go into effect, then the subject-matter, upon which the decree would otherwise have operated, is gone, and the parties to the suit manifestly can never be divorced by operation of law. The statute on abatement of actions, which provides that a pending action shall not abate by the death of a party, does not and cannot preserve the subject-matter of an action. A divorce action differs in character from every other. It is not based upon a claim for a money recovery, nor is it a proceeding for the establishment of property rights. Such other actions may ordinarily be as fully litigated, in favor of or against the estate of one of the parties, after the death of such party as before. There are salutary reasons why pending actions of that nature should not abate. But in a divorce action the money and property interests involved are only incidental to the principal object of the suit. Whether the object sought is a limited or an absolute divorce, the primary and underlying purpose of such action is a modification or dissolution of the marriage relation. The

settlement of matters of permanent alimony and property rights is only the incidental means of carrying into effect the one ultimate object. *Until the decree can become operative as a divorce, the provisions of the decree, as to those incidental matters, cannot go into effect.*

"Though the interlocutory decree has the effect of suspending the personal obligations between the parties (London Guarantee & Accident Co. v. Industrial Accident Commission, 181 Cal. 460), yet, where an interlocutory decree is entered and the marriage relation is dissolved by death before the decree has become operative as a divorce, the living party is entitled to the property rights springing by operation of law from the marital relation, and is not concluded by the interlocutory decree fixing those rights (In re Crandall, 196 N. Y. 127; Chase v. Webster, 168 Mass, 228; Estate of Seiler, 164 Cal. 181; see note, Ann. Cas. 1914B, 1094), unless, perhaps, by contract, waiver or estoppel, the living party has become bound thereby. Gould v. Superior Court, 191 Pac. (Cal. App.) 56. *Certainly, the living party could not take both the rights springing from the marital relation and the rights and benefits provided in lieu thereof by the decree.*" (Italics supplied.)

Administrator draws comfort from the last sentence italicized above. We have no quarrel with the sentiment there expressed. If plaintiff had acquired rights and benefits, he of course would be required to do equity for he has received property under a decree which has never become operative. In Carpenter v. Carpenter, 146 Neb. 140, 18 N. W. 2d 737, which was not a case where one of the parties had died, but involved an application addressed to the discretion of the court to set aside the decree within 6 months following its rendition, we said: "The setting aside of the decree must not produce an unconscionable result. Where property rights have been affected by the decree and as an incident to the nullification of that part of the decree, there should be the greatest possible restoration of the parties to the

status quo existing at the time of the decree. If these conditions are met, then the trial court has the power to and should grant the application." The plaintiff, however, received nothing under the decree which belonged to the deceased, and if he had given her his ring and statuettes which she claimed, he would have been entitled to their return under the statutory allowances given a surviving spouse. We call particular attention to the previous sentence italicized above, "Until the decree can become operative as a divorce, the provisions of the decree, as to those incidental matters (settlement of property rights) cannot go into effect."

Administrator urges In re Estate of Holmberg, 108 Neb. 382, 187 N. W. 903, in support of his position. That case was one where subsequent to the entry of a decree and before the expiration of 6 months, the husband died and the surviving wife was held to be estopped from claiming statutory allowances. That case, however, involved a deed executed subsequent to the entry of the decree for the purpose of obtaining immediate payment of the alimony award and settling the rights of the parties. The deed contained the following clause: " 'This deed is given in settlement of and as a release of all claims, rights and interests of said Augusta Holmberg in the property of said Peter Holmberg arising out of their marital relations and in full settlement of the property rights since divorce of said parties.' " We there held that the surviving spouse had specifically contracted to bar her rights and enforced the agreement. There is no difference between that case and Rieger v. Schaible, 81 Neb. 33, 115 N. W. 560, 17 L. R. A. N. S. 866, where we held an antenuptial agreement of like purport was sufficient to bar a widow's statutory allowance, or the cases referred to heretofore involving a properly executed separation agreement. There is, however, a clear distinction between those situations in which the parties, for a consideration, specifically agree to release all rights of inheritance in the property of the other and

a divorce decree where property rights of the parties are adjudicated but which cannot become final for a period of 6 months thereafter.

Here the plaintiff received nothing under the decree except his property, which in no event would be a part of the estate of the deceased. If we apply the rule applicable to a valid, enforceable contract waiving rights of inheritance to this situation, we hold that the mere entry of a decree of divorce which determines property rights constitutes a sufficient settlement of those rights to estop the parties from claiming rights of inheritance if one should die before the decree becomes final. It would make the decree final as to those property rights from the moment of its entry. To do so would in effect nullify section 42-340, R. R. S. 1943, which provides that a decree *"shall not become final or operative"* until 6 months after the trial and decision. We find that the plaintiff is not estopped by virtue of the divorce decree from asserting his rights as the surviving husband of the deceased. The provisions of a divorce decree determining property rights do not become fully effective until the decree becomes operative and final.

Having determined that the plaintiff is entitled to all of the rights of a surviving husband, is he entitled to rights of homestead in 2731 Van Dorn Street? Deceased, as the surviving widow of James Farrell, her former husband, acquired rights of homestead in said property as well as a one-half interest in the fee. Those rights of homestead terminated with her death. Can the plaintiff, as her surviving husband, claim a homestead by virtue of her one-half interest? Certainly as to the Farrell heirs, who hold the other undivided one-half interest, which was subject to the homestead assigned to the deceased, there can be no continuance of the homestead rights which barred them from partition.

The administrator argues that the statutory homestead interest in favor of a surviving spouse has no application to the ownership of a fractional interest in

real estate. In Giles v. Miller, 36 Neb. 346, 54 N. W. 551, 38 Am. S. R. 730, we held the undivided interest in real estate, accompanied by the exclusive occupancy of the premises by the owner of such interest and his family as a home, is sufficient to support a homestead exemption.

However, considering the facts present in this case, which culminated in the divorce decree of February 8, 1961, where the parties maintained separate establishments for more than 2 years, and where the wife was enjoying homestead rights from a previous marriage, we hold that there was no selection of a homestead in the present marriage from the wife's separate property, nor can we infer any intention to do so during the lifetime of the wife. As a matter of equity, under the facts in this case the plaintiff should not be permitted to claim homestead rights in the fractional interest as against the other heirs of the deceased.

In Schroeder v. Ely, 161 Neb. 262, 73 N. W. 2d 172, we held: "The trial court found that, under the equitable situation here existing, the Elys should be denied their homestead rights. That equity may do so, in proper cases, has long been held by this court. As stated in Cochran v. Cochran, 42 Neb. 612, 60 N. W. 942: 'The district courts of this state, being courts of general equity jurisdiction, are not limited in the exercise of such jurisdiction by statute.' "

For the reasons given, we reverse the judgment of the trial court which reversed the order of the county court and remanded the proceedings to the county court for an order dismissing the claim of Leslie D. Parker. We direct that the district court affirm the judgment of the county court in all respects except as to the allowances of a homestead interest in 2731 Van Dorn Street.

REVERSED AND REMANDED WITH DIRECTIONS.