**PRUDENTIAL INSURANCE COMPANY OF AMERICA, a corporation,**

v.

**Robert James DULEK and Betty Lou Dulek, Appellants,**

**Bonnie Lynn Dulek, Appellee.**

**No. 81–1031.**

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 13, 1981.

Decided Dec. 2, 1981.

Thomas J. Guilfoyle, Guilfoyle, Fogarty & Lund, Omaha, Neb., for appellants.

Mark S. Bertolini, Law Offices of D. L. Pelton, Bellevue, Neb., for appellee.

Before GIBSON, Senior Circuit Judge, and BRIGHT and ROSS, Circuit Judges.

BRIGHT, Circuit Judge.

In this interpleader action,[1] the parents and the former wife of the decedent, Terrence Alan Dulek, claim the proceeds of his Servicemen's Group Life Insurance Policy. The decedent had directed distribution of the policy proceeds "by law." The district court ruled in favor of the former wife. On this appeal by the parents, we reverse.

In granting summary judgment in favor of Bonnie Lynn Dulek (Bonnie), the decedent's former wife, the district court determined that Bonnie qualified as his "widow" under the federal statute governing Servicemen's Group Life Insurance, 38 U.S.C. §§ 765–779 (1976), thus, entitling her to a preference to policy proceeds over Dulek's parents. Bonnie had obtained a preliminary divorce decree in Nebraska two months before the decedent's death. Because Nebraska law postpones the final dissolution of the marriage until six months after issuance of such a decree, however, the court concluded that Bonnie remained Terrence Dulek's "lawful spouse" at the time of his death.

The decedent's parents, Robert and Betty Dulek (the Duleks), contend in this appeal that section 30–2353 of the Nebraska Probate Code, Neb.Rev.Stat. § 30–2353 (Reissue 1979), precludes Bonnie from asserting the rights of a surviving spouse. We agree with the Duleks, and accordingly, reverse the judgment of the district court.

## I. Background.

Bonnie Lynn Bell and Terrence Alan Dulek were married on January 19, 1978, while both were on leave from their duties as noncommissioned officers at Offutt Air Force Base, Nebraska. The following month, Terrence Dulek completed a Servicemen's Group Life Insurance Policy form indicating that he wanted the proceeds distributed as provided "by law." This designation remained in effect at the time of his death.

After two and one half months of marriage, Bonnie and Terrence Dulek separated. On May 17, 1978, she and the decedent executed a separation agreement, dividing their debts and assets and releasing each other "from all liability, claims for money or property, causes of action, rights, demands, alimony or support whatsoever in law or in equity * * *." Bonnie Dulek obtained a Nebraska divorce decree the following year, on April 20, 1979. Because of the six-month waiting period prescribed by Nebraska law, the decree had not become final at the time of Terrence Dulek's death.

On May 28, 1979, Terrence Dulek died of injuries sustained in a motorcycle accident. Bonnie and the Duleks both submitted claims for the decedent's death benefits. The Prudential Insurance Company, which had issued the group policy covering Terrence Dulek, brought this interpleader action to determine the claimants' entitlement to the proceeds of the policy. As previously mentioned, the district court awarded the policy proceeds to Bonnie.

## II. Discussion.

The federal statute governing Servicemen's Group Life Insurance, 38 U.S.C. §§ 765–779 (1976), specifies that unless otherwise designated a decedent's widow takes precedence over the parents in the order of distribution.[2] The statute defines "widow"

---

1. The stakeholder in this action, The Prudential Insurance Company, claimed no financial interest in the insurance proceeds. The district court, therefore, granted it partial summary judgment shortly after the lawsuit commenced. *Prudential Ins. Co. of America v. Dulek*, 504 F.Supp. 1015, 1016 (D.Neb.1980).

2. The statute provides in pertinent part:
   Beneficiaries; payment of insurance
   (a) Any amount of insurance under this subchapter in force on any member or former member on the date of his death shall be paid, *upon the establishment of a valid claim*

*therefor, to the person or persons surviving at the date of his death*, in the following order of precedence:
   First, to the beneficiary or beneficiaries as the member or former member may have designated by a writing received prior to death (1) in the uniformed services if insured under Servicemen's Group Life Insurance, or (2) in the administrative office established under section 766(b) of this title if separated or released from service, or if assigned to the Retired Reserve, and insured under Servicemen's Group Life Insurance, or if insured under Veterans' Group Life Insurance;

as a "person who is the lawful spouse of the insured member at the time of his death." 38 U.S.C. § 765(7) (1976). This definition necessitates reference to state law to give content to the term "lawful spouse," and requires (1) a choice of which state's law governs, and (2) a determination of the applicable law of that state. *See DeSylva v. Ballentine*, 351 U.S. 570, 581, 76 S.Ct. 974, 980, 100 L.Ed. 1415 (1956).

The district court in this case chose to apply the law of Nebraska based upon the numerous contacts of the decedent and the parties to this proceeding with that state. Neither party disputes the choice of Nebraska law.

In determining the applicable Nebraska law, the district court ruled that the Nebraska law of domestic relations defines the marital status of Bonnie Dulek at the time of decedent's death. Nebraska law specifies that a decree of divorce does not become final until six months after initially entered.[3] Applying this rule to the instant case, the court concluded that Bonnie remained Terrence Dulek's "lawful spouse" at the time of his death and awarded her the insurance proceeds.

We disagree with the district court's decision to apply the Nebraska law of domestic relations to resolve this dispute. Because we must consider the rights of the parties to Terrence Dulek's life insurance proceeds "on the date of his death * * *, upon the establishment of a valid claim therefor, * * *." 38 U.S.C. § 770(a) (1976), the Nebraska Probate Code seems the more appropriate state law to determine the claimants'

rights. Section 30–2353 of the Nebraska Probate Code addresses the effect of a divorce, annulment or separation on the rights of a surviving spouse as follows:

30–2353. Effect of divorce, annulment, and decree of separation. (a) An individual who is divorced from the decedent or whose marriage to the decedent has been dissolved or annulled by a decree that has become final is not a surviving spouse unless, by virtue of a subsequent marriage, he is married to the decedent at the time of death. A decree of separation which does not terminate the status of husband and wife is not a divorce for purposes of this section.

(b) For purposes of parts 1, 2, 3, and 4 of this article and of section 30–2412, a surviving spouse does not include:

(1) an individual who obtains or consents to a final decree or judgment of divorce from the decedent or an annulment or dissolution of their marriage, which decree or judgment is not recognized as valid in this state, unless they subsequently participate in a marriage ceremony purporting to marry each to the other, or subsequently live together as man and wife;

(2) an individual who, following a decree or judgment of divorce or annulment or dissolution of marriage obtained by the decedent, participates in a marriage ceremony with a third individual; or

(3) an individual who was a party to a valid proceeding concluded by an order purporting to terminate all marital prop-

---

*Second, if there be no such beneficiary, to the widow or widower of such member or former member;*

Third, if none of the above, to the child or children of such member or former member and descendants of deceased children by representation;

*Fourth, if none of the above, to the parents of such member or former member or the survivor of them;*

Fifth, if none of the above, to the duly appointed executor or administrator of the estate of such member or former member;

Sixth, if none of the above, to other next of kin of such member or former member enti-

tled under the laws of domicile of such member or former member at the time of his death. [38 U.S.C. § 770 (1976) (emphasis added).]

**3.** The statute provides in part:

*Decree; when final.* A decree dissolving a marriage shall not become final or operative until six months after the decree is rendered, except for the purpose of review by appeal, and for such purpose only the decree shall be treated as a final order as soon as rendered. [Neb.Rev.Stat. § 42–372 (Reissue 1978).]

erty rights against the decedent. [Neb. Rev.Stat. § 30–2353 (Reissue 1979).][4]

Subsection (b)(3) governs this case. The record establishes that Bonnie Dulek had participated in valid divorce proceedings which had not yet become final. The separation agreement settled all property rights between Bonnie and Terrence Dulek and the divorce decree divided their personal property, although neither instrument specifically mentions the life insurance policy. By entering into the separation agreement, and thereafter obtaining a divorce decree, Bonnie became a party to a valid proceeding (the divorce) in which the state court issued an order purporting to terminate all property rights against the decedent, Terrence Dulek.

The application of section 30–2353(b)(3) of the Nebraska Probate Code precludes Bonnie Dulek from claiming the rights of a "surviving spouse" under Nebraska law.[5] We deem the terms "surviving spouse" in the Nebraska Probate Code equivalent to the terms "widow" and "lawful spouse" in the federal statute for purposes of this case. Because Bonnie cannot assert the rights of Terrence Dulek's surviving spouse under Nebraska law, she does not qualify as his "widow" under federal statute.

Our determination that state probate law governs the parties' rights under this federal statute accords with the Supreme Court's approach in *DeSylva v. Ballentine*, 351 U.S. 570, 76 S.Ct. 974, 100 L.Ed. 1415 (1956). In *DeSylva*, the Supreme Court considered the scope of the renewal right under the federal Copyright Act, 17 U.S.C. §§ 1–32, which similarly required reference to state law.

The Copyright Act provided for an initial copyright of twenty-eight years, renewable for a second twenty-eight year term upon application within one year of the expiration of the original term. *Id.* at 571, 76 S.Ct. at 975.

In *DeSylva*, a composer had died before exercising his right to renew the copyrights on his musical compositions. Both his widow and an illegitimate child survived him, and each claimed an interest in the renewal rights under the federal statute. Section 24 of the Copyright Act provided:

> That in the case of any other copyrighted work, * * * the author of such work, if still living, or the widow, widower, or children of the author, if the author be not living, or if such author, widow, widower, or children be not living, then the author's executors, or in the absence of a will, his next of kin shall be entitled to a renewal and extension of the copyright in such work for a further term of twenty-eight years * * *. [17 U.S.C. § 24.]

The Supreme Court looked to California law to determine whether the statutory term "children" in the federal Copyright Act included an illegitimate child. *Id.* at 581–82, 76 S.Ct. at 980–981. In choosing to apply the California Probate Code as the relevant body of state law, the Court stated:

> Considering the purposes of § 24 of the Copyright Act, we think it sufficient that the status of the child is that described by § 255 of the California Probate Code. The evident purpose of § 24 is to provide for the family of the author after his

---

4. Subsection (b) of this provision limits its applicability to "parts 1, 2, 3, and 4 of this article and of section 30–2412." This article of Nebraska law is entitled "Intestate Succession and Wills." Parts 1, 2, 3, and 4 govern Intestate Succession, Elective Share of Surviving Spouse, Spouse and Children Unprovided for in Wills, and Exempt Property and Allowances, respectively.

Section 30–2412 covers "Priority among persons seeking appointment as personal representative."

5. In a case arising under a comparable federal insurance statute, the Fourth Circuit determined that general equitable principles barred the claim of decedent's former wife, who had obtained a limited (non-final) decree of divorce and subsequently entered a second bigamous marriage. *See Brinson v. Brinson*, 334 F.2d 155 (4th Cir. 1964); *accord Brantley v. Skeens*, 266 F.2d 447, 452 (D.C.Cir.1959) (clean hands doctrine bars claim by insured's husband who conceded false swearing and bigamy). We do not consider the applicability of equitable principles in the instant case because the application of § 30–2353(b)(3) serves to bar Bonnie Dulek's claim to the decedent's insurance proceeds.

death. Since the author cannot assign his family's renewal rights, § 24 takes the form of a compulsory bequest of the copyright to the designated persons. This is really a question of the descent of property, and we think the controlling question under state law should be whether the child would be an heir of the author. It is clear that under § 255 the child is, at least to that extent, included within the term "children." [*Id.* at 582, 76 S.Ct. at 981.]

Other circuits have followed *DeSylva's* approach in cases arising under federal insurance statutes analogous to the one which governs the case before this court. In *Brantley v. Skeens,* 266 F.2d 447 (D.C.Cir. 1959), the court considered conflicting claims to accidental death benefits under the Federal Employees Group Life Insurance Act, 5 U.S.C. § 2093, which specifies almost verbatim the same order of payment of insurance proceeds as does the Servicemen's Group Life Insurance Statute. Citing *DeSylva v. Ballentine,* the court applied the District of Columbia law of intestate succession and concluded that the decedent's one legitimate child and six illegitimate children should share the proceeds equally.

What is encompassed in the term "child" under the Act is to be determined by the law of the jurisdiction in which the claim arises; here, the District of Columbia. *With regard to the descent of personal property, the law of this jurisdiction is that illegitimate children are on equal standing with those born in lawful wedlock insofar as the mother's estate is concerned.* [*Brantley v. Skeens, supra,* 266 F.2d at 455 (footnote omitted; emphasis added).]

In *Metropolitan Life Insurance Co. v. Manning,* 568 F.2d 922 (2d Cir. 1977), the court awarded the proceeds of a federal employees' group life insurance policy to decedent's second husband, Edward Manning, despite the possibility that their marriage was technically invalid because decedent had never obtained a divorce from her first husband. The decedent had paid the premiums from wages earned after her marriage to Manning, during which period she and Manning held themselves out as husband and wife. Coupled with Manning's ignorance of the decedent's former marriage until after her death, the court concluded that Manning was the lawful widower, at least for the purpose of determining his right to the insurance proceeds.

We do not believe that Congress * * * referred to the lawful widow or widower as those terms might be used in an abstract sense. Rather, we think that Congress posited an inquiry as to who, as a practical matter, would be entitled under applicable state law to the rights normally attaching to a surviving spouse. [*Metropolitan Life Insurance Co. v. Manning, supra,* 568 F.2d at 929 n.11.]

The case before this court, similarly requires reference to state law to determine the rights of decedent's survivors. We note that the district court seems tacitly to have acknowledged that section 30–2353(b)(3), if applied, would bar Bonnie Dulek's claim. The trial court observed:

Section 30–2353(b) was designed to change the prior case law of Nebraska which had held that, in most situations, interlocutory divorce decrees did not bar the intestate rights of a spouse. [*Prudential Insurance Co. of America v. Dulek, supra,* 504 F.Supp. at 102.][6]

The present Nebraska law of intestate succession specified in section 30–2353(b)(3), bars a party to a valid divorce proceeding, concluded by an order which purports to

---

**6.** The Comment to Neb.Rev.Stat. § 30–2353 states specifically that paragraph (b) changes previous decisional law under which a preliminary divorce decree did not estop a decedent's spouse from asserting his or her rights as a surviving spouse until the six-month waiting period had completely elapsed. *See In Re Estate of Bassett,* 189 Neb. 206, 201 N.W.2d 848 (1972) (husband's death nine days before divorce decree would have become final no bar to wife's right to statutory half share of husband's estate); *In Re Parker's Estate,* 177 Neb. 197, 128 N.W.2d 696 (1964) (husband not estopped from asserting rights of surviving spouse when divorced wife died before six-month waiting period elapsed).

terminate all property rights, from claiming rights of a surviving spouse. We apply that law to the case at hand, and accordingly, reverse the judgment of the district court. We remand this case to the district court for entry of an appropriate judgment directing payment of the policy proceeds to the decedent's parents, Robert and Betty Dulek.