IN RE ESTATE OF JACQUELINE WATSON, DECEASED.
ROBERT WATSON, APPELLANT, v. DAU'N M. WATSON,
PERSONAL REPRESENTATIVE, APPELLEE.
348 N.W.2d 856

Filed May 11, 1984.   No. 83-248.

Jacobsen, Orr & Nelson, for appellant.

Gerald T. Whelan of Whelan, Foote & Scherr, P.C., for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

KRIVOSHA, C.J.
The question presented to us by this appeal is

whether the death of one of the parties to a dissolution of marriage during the 6-month waiting period prescribed under the provisions of Neb. Rev. Stat. § 42-372 (Reissue 1978) results in the other party to the dissolution becoming the surviving spouse of the deceased under the provisions of the Nebraska Probate Code, and in particular Neb. Rev. Stat. § 30-2353 (Reissue 1979). Both the county court for Adams County, Nebraska, and, on appeal, the district court for Adams County, Nebraska, determined that Robert Watson was not the surviving spouse of Jacqueline Watson upon her death. We have now considered the arguments of the parties and determine that both the county court, in the first instance, and the district court, on appeal, were in error, and for that reason we reverse and remand.

The facts in the case are neither complicated nor in dispute. Robert and Jacqueline Watson were married on August 20, 1950. On July 29, 1981, Mrs. Watson filed in the district court for Adams County, Nebraska, a petition for dissolution of her marriage to Mr. Watson. No responsive pleading of any type was filed by Mr. Watson. On January 29, 1982, the district court took the matter under advisement, and on March 2, 1982, entered a decree dissolving the marriage of the parties and dividing the property. On July 7, 1982, less than 6 months after the entry of the decree by the district court and before the decree became final, Mrs. Watson, then a resident of Adams County, Nebraska, died. She was survived by her four children and Mr. Watson.

All of the parties agree that prior to the adoption of the Nebraska Probate Code, and in particular § 30-2353, the death of Mrs. Watson during the 6-month period following the entry of the decree of divorce would have resulted in the decree being considered a nullity and Mr. Watson being considered the surviving spouse of Mrs. Watson. In *Parker v. Comstock*, 177 Neb. 197, 200, 128 N.W.2d 696, 699 (1964), we examined just such a situation and said:

Plaintiff is still the surviving husband of the deceased. Section 42-340, R.R.S. 1943, provides that a decree of divorce shall not become final or operative until 6 months after trial and decision, except for the purpose of review by appeal. The divorce herein had never become final because the deceased died within the 6-month period. As we said in Williams v. Williams, 146 Neb. 383, 19 N.W.2d 630: "When the marriage relation is extinguished by death prior to the time when the decree can go into effect, then the subject matter is gone, and the parties can never be divorced by operation of law."

We further said in *Parker* at 204, 128 N.W.2d at 700-01:

"During the entire pendency of that decree, the marital relation continues. The decree cannot, under the law, take effect and dissolve the marriage until at the expiration of the six months' period. In order that a marriage status be dissolved by decree of divorce, such status obviously must exist at the time of the taking effect of the decree. When the marriage relation is extinguished by death prior to the time when the decree can go into effect, then the subjectmatter, upon which the decree would otherwise have operated, is gone, and the parties to the suit manifestly can never be divorced by operation of law. . . ."

The children of Jacqueline Watson, however, argue that the adoption of Nebraska Probate Code § 30-2353 has changed the law in Nebraska with regard to the effect of death during the 6-month period. We do not agree. The Nebraska Probate Code is, to a large extent, modeled after the Uniform Probate Code (UPC) adopted by the National Conference of Commissioners on Uniform State Laws. Had the Legislature adopted the UPC as drafted by the commissioners, then the argument made by the

heirs of Jacqueline Watson might be correct. Section 2-802 of the UPC provides as follows:

> (a) A person who is divorced from the decedent or whose marriage to the decedent has been annulled is not a surviving spouse unless, by virtue of a subsequent marriage, he is married to the decedent at the time of death. A decree of separation which does not terminate the status of husband and wife is not a divorce for purposes of this section.

Unif. Probate Code § 2-802, 8 U.L.A. 170 (1983).

The Legislature, however, in adopting § 30-2353(a) chose not to adopt the language of the UPC and, instead, modified it:

> (a) An individual who is divorced from the decedent or whose marriage to the decedent has been dissolved or annulled by a decree *that has become final* is not a surviving spouse unless, by virtue of a subsequent marriage, he is married to the decedent at the time of death.

(Emphasis supplied.) Specifically, the Legislature sought to insert the words "that has become final" into the language proposed by the UPC. Both the Nebraska Comments to § 30-2353 and the working papers of the Judiciary Committee make it clear that the purpose of inserting the words "that has become final" is to bring about just the opposite result that would have existed but for the insertion of that phrase. The Nebraska Comment reads as follows: "A Nebraska decree dissolving a marriage becomes operative for succession and other testamentary purposes *only at the expiration of the six month waiting period* under section 42-372." The Comment also refers to paragraph (b), which we will discuss in a moment. In addition, the working papers explain the purpose of paragraph (a). They provide:

> Section 75(a) has been drafted so as to clearly conform with present Nebraska law. The term "dissolution" has been added in accordance with the no fault divorce language. Section

75(a) adds to the Official Text of the UPC "by a decree that has become final" to clarify that the decree becomes operative for succession and other testamentary purposes only at the expiration of the six month waiting period.

Working Papers and Preliminary Interim Study Report on a revised Nebraska Probate Code 117 (1973). It appears to us that the language of § 30-2353(a) is clear, and therefore it is unnecessary of interpretation. It provides that unless the 6-month period has expired, making the decree final, a divorce does not preclude the former spouse from being the surviving spouse under the Nebraska Probate Code.

The heirs of Jacqueline Watson argue, however, that § 30-2353(a) has no application to the instant case because, they allege, it applies only in those cases where the decree has already become final. Instead, they argue that § 30-2353(b)(3) is applicable. We believe that such is not the case. Section 30-2353(b) provides:

(b) For purposes of parts 1, 2, 3, and 4 of this article and of section 30-2412, a surviving spouse does not include:

(1) an individual who obtains or consents to a final decree or judgment of divorce from the decedent or an annulment or dissolution of their marriage, which decree or judgment is not recognized as valid in this state, unless they subsequently participate in a marriage ceremony purporting to marry each to the other, or subsequently live together as man and wife;

(2) an individual who, following a decree or judgment of divorce or annulment or dissolution of marriage obtained by the decedent, participates in a marriage ceremony with a third individual; or

(3) an individual who was a party to a valid proceeding concluded by an order purporting to terminate all marital property rights against the decedent.

The heirs of Jacqueline Watson concede that subsections (b)(1) and (2) can have no application, but they maintain that (b)(3) is intended to cover a situation where a decree of divorce is granted and death occurs during the 6-month period. In other words, the heirs of Jacqueline Watson argue that § 30-2353(a) applies only *after* the 6-month period, while § 30-2353(b)(3) applies only *during* the 6-month period. We are unable to accept that argument. If this were true and if it were the intention of the Legislature to provide that the death of one of the parties to a decree of dissolution during the 6-month period should not result in the other party being the surviving spouse, there would have been no need to modify the UPC as was done when adopting § 30-2353(a). This is precisely what § 30-2353(a) provided before the words "that has become final" were added. It is difficult to imagine why the Legislature would modify the UPC to bring about exactly the same result which would occur had the Legislature not modified or amended it. Furthermore, if the argument made by the heirs of Jacqueline Watson is correct, then the Nebraska Comment following § 30-2353, to the effect that a decree dissolving a marriage becomes operative for succession and other testamentary purposes only at the expiration of the 6-month waiting period, makes absolutely no sense at all.

We believe that an examination of both the Nebraska Comment and the working papers of the Judiciary Committee explains the purpose of subsection (b). The Nebraska Comment says: "Paragraph (b) changes previous decisional law," and then cites us to the cases of *Yost v. Yost*, 161 Neb. 164, 72 N.W.2d 689 (1955), *Lippincott v. Lippincott*, 141 Neb. 186, 3 N.W.2d 207 (1942), and *Bassett v. First Nat. Bank & Trust Co.*, 189 Neb. 206, 201 N.W.2d 848 (1972). Additionally, the working papers provide:

Section 75(b) should be taken to represent a sub-

stantial departure from present Nebraska law. In the absence of a valid divorce decree entitled to be recognized in the State of Nebraska, Nebraska law would treat the parties as still married for purposes of intestate succession and testamentary dispositions. . . . Section 71(b) [sic] is an attempt to deal with attacks on foreign divorce decrees by creating an estoppel where the surviving spouse has (1) consented to the foreign decree, (2) married a third party after the entry of the foreign decree, or (3) been a party to a valid proceeding concluded by an order purporting to terminate all marital property rights.

Working Papers and Preliminary Interim Study Report, *supra* at 117-18. The comments contained in the working papers make it clear that the Legislature recognized that subsection (b) was addressed to the matter of collateral attack, and the cases cited support that concern.

The *Yost* case involved a situation where one of the parties had obtained a divorce in a foreign jurisdiction and the former spouse sought to bring an independent divorce action in Nebraska, attacking the foreign divorce on the grounds that at the time the foreign divorce was granted the party who had obtained the divorce was not a bona fide resident of Florida. In refusing to recognize the Florida decree, this court in *Yost*, *supra* at 169, 72 N.W.2d at 693, said: " 'A divorce from the bonds of matrimony obtained in another jurisdiction shall be of no force or effect in this state, if both parties to the marriage were domiciled in this state at the time the proceeding for the divorce was commenced.' " Subsection (b)(1) of § 30-2353 is intended to prevent by statute such an attack from being made and thereby permitting one of the parties to the decree to have a divorce set aside after a foreign decree has been entered, on the ground of its alleged invalidity.

In the *Lippincott* case we have a situation where more than 6 months had expired. While the *Bassett*

case involves a situation wherein one of the parties died within the 6-month period, it does not address that issue in that manner. The claim made in the *Bassett* case was that the surviving wife was *estopped* from claiming to be the surviving spouse because she had entered into a valid property settlement agreement. In rejecting the argument, this court simply recognized that if one of the parties dies during the 6-month period, the property settlement agreement has no viability independent of the finality of the decree of divorce. We must not lose sight of the fact that subsections (a) and (b) to § 30-2353 were drafted by the commissioners to take into account situations existing in the various jurisdictions and not just Nebraska. There may very well be jurisdictions in which some type of valid proceeding may be conducted solely to terminate marital property rights, and when this is done, the party may not *collaterally* attack it as being invalid. That situation simply does not exist in Nebraska, and § 30-2353(b)(3) has no apparent application to any procedure known in Nebraska not otherwise covered by § 30-2353(a).

The heirs of Jacqueline Watson further direct our attention to the case of *Prudential Ins. Co. of America v. Dulek*, 665 F.2d 217 (8th Cir. 1981), wherein the U.S. Court of Appeals for the Eighth Circuit purported to decide how this court would interpret § 30-2353 were we called upon to do so. Our review of the opinion simply leads us to the conclusion that the court of appeals was in error and that the opinion is not correct under Nebraska state law. The court of appeals relied, to a large extent, upon language to the effect that § 30-2353(b) was designed to change the prior case law of Nebraska. That prior case law, however, was with regard to the right to collaterally attack a divorce decree which, on its face, appears to be valid, and not the effect of death during the 6-month period. That is not the same situation as presented to us in this case.

We are convinced that the action of the Legislature in amending § 30-2353(a) by adding the phrase "that has become final" was an attempt by the Legislature to keep intact this court's previous decisions as expressed in *Parker v. Comstock*, 177 Neb. 197, 128 N.W.2d 696 (1964), and for that reason we believe the correct rule to be that under the provisions of the Nebraska Probate Code if one of the parties to a decree of dissolution dies during the 6-month period, the decree is effectively made nonoperative and the other party is the surviving spouse within the meaning of the Nebraska Probate Code. For that reason the judgment of the district court is reversed and the cause remanded with instructions to enter a decree in conformance with this opinion.

REVERSED AND REMANDED WITH DIRECTIONS.

BOSLAUGH, J., dissenting.

The clear and unambiguous language of Neb. Rev. Stat. § 30-2353(b)(3) (Reissue 1979) provides that where there has been a valid court proceeding concluded by an order purporting to terminate all marital property rights, a party governed by such an order cannot be deemed a "surviving spouse." A reading of this plain language leads to the inescapable conclusion that where, as in the present case, a husband has been a party to such an order, he cannot receive another share of his wife's estate as a "surviving spouse." The eighth circuit reached this conclusion in applying § 30-2353 in *Prudential Ins. Co. of America v. Dulek*, 665 F.2d 217 (8th Cir. 1981).

The majority relies heavily on the draftsman's comments to § 30-2353 in reaching its decision. When the language of a statute is plain and unambiguous, as it is in the statute involved herein, no resort may be had to legislative history to explain such terms. In *O'Neill Production Credit Assn. v. Schnoor*, 208 Neb. 105, 108, 302 N.W.2d 376, 378 (1981), we said: " '[A] statute should be construed so that an ordinary person reading it would get from it the usual

accepted meaning. Rules of interpretation are resorted to for the purpose of resolving an ambiguity, not of creating it.' ''

In *County of Douglas v. Board of Regents*, 210 Neb. 573, 577-78, 316 N.W.2d 62, 65 (1982), we said:

"A statute is not to be read as if open to construction as a matter of course. Where the words of a statute are plain, direct, and unambiguous, no interpretation is needed to ascertain the meaning. . . . It is not within the province of a court to read a meaning into a statute that is not warranted by the legislative language. Neither is it within the province of a court to read anything plain, direct, and unambiguous out of a statute."

We noted in *Norden Laboratories, Inc. v. County Board of Equalization*, 189 Neb. 437, 440, 203 N.W.2d 152, 154 (1973), that legislative history cannot serve to " ' "import an intent into legislation devoid of language fit to express it." ' '' In the present case there is no language in the unambiguous exception listed in § 30-2353(b)(3) which would lead one to the conclusion that its application is as limited as concluded by the majority.

It is apparent from the plain language of the statute that the exception embodied in § 30-2353 was designed to prevent a spouse who had received a share of the marital estate through a court order from receiving another share of that estate due to the untimely death of a "soon to be" former spouse. This was mischief the statute was clearly designed to prevent, and it should be applied as it was written.